SEILER, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 11 — November 29, 1901.*

(1-6) *Supreme court: Jurisdiction: Constitutional law: Criminal cases: Exceptions: Report of questions: Case not removed from trial court. (7-9) Instructions to jury: Fornication: Previous chastity: Withdrawal of one count in information: Presumptions.*

1. Secs. 4720–4723, Stats. 1898, inclusive, purport to confer original jurisdiction, in some respects, upon the supreme court in criminal cases.
2. Such sections were adopted by the territorial legislature from Massachusetts, and preserved as part of the procedure in criminal cases under the constitution of the state, unmindful that no power was given by the constitution, or authorized thereby, enabling the supreme court to fully administer the same.
3. There are three separate constitutional grants of jurisdiction to the supreme court: (1) appellate jurisdiction, limited to the revision of decisions of inferior courts; (2) superintending control over inferior courts, being the power to control the course of ordinary litigation in such courts by the use of writs named in the constitution or authorized thereby, to the same extent and in the same manner as such power was exercised by the court of King's Bench under the English system of jurisprudence; (3) jurisdiction, by the use of the writs named in the constitution for that purpose, to protect the sovereignty of the state, preserve the liberty of the people, and safeguard the rights of its citizens.
4. The legislature may devise new methods of exercising a grant of judicial power to the supreme court not dependent upon a particular constitutional method, but cannot limit or add to the jurisdiction itself.
5. Secs. 4720–4723, Stats. 1898, inclusive, are inoperative except in so far as they can be administered under the appellate power of the supreme court.
6. In the exercise of the appellate jurisdiction of the supreme court in administering such statutes, the case in which the jurisdiction is invoked is not removed from the trial court. It remains there, the jurisdiction of such court being undisturbed by the certification of the questions to the supreme tribunal, except as it is necessarily restrained to await the decision of such tribunal.
7. A refusal to instruct a jury by calling their attention to a particular

circumstance disclosed by the evidence, or to a particular portion of the evidence, and directing them to consider the same in making up their verdict, is proper in the absence of any special circumstance requiring a different course.

8. A jury may properly decide in favor of the state in a prosecution for fornication, on the issue as to the previous chaste character of the female participant in the offense, on her evidence alone, though they may discredit her evidence as to some of the particulars of the criminal intimacy.

9. If an information charges two offenses and there is a general verdict of guilty, and sentence is passed upon one charge only, and the instructions preserved in the record indicate that the other charge was withdrawn before submission of the case to the jury, the presumption will be entertained that the court record of the trial is in harmony therewith.

[Syllabus by MARSHALL, J.]

ERROR to review a judgment of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Affirmed.*

The writ issued to review a conviction of the offense of fornication. The information contained two counts, one for rape and one for fornication with a sane female of previous chaste character under the age of eighteen years. Upon the trial the charge of rape was withdrawn by the district attorney by oral notice to the court and its permission; but it was not formally stricken from the information, though the court submitted to the jury only the charge of fornication. The evidence is undisputed that the age of the girl, at the time the offense was alleged to have been committed, was fifteen years, and that the act of criminal intimacy charged took place or else the accused was guilty of the offense of rape. The only evidence as to the previous chaste character of the girl was given by her. The jury found a general verdict of guilty. Exceptions were duly alleged on behalf of the accused, and certain questions embodying such exceptions were duly certified to this court to be answered, one of such questions being whether it was permissible to allow a conviction of the offense of which the accused was said to be

guilty, on the uncorroborated evidence of his partner in crime. The questions were answered adversely to the accused. No formal order was thereupon entered in this court remanding the record to the circuit court or for further proceedings in such court. Nevertheless, the clerk of this court, according to the usual practice, returned the record with a copy of the opinion, whereupon, against objection by counsel for the accused, he was sentenced by the circuit court, the judgment being that he be confined for an indeterminate period in the state reformatory.

The cause was submitted for the plaintiff in error on the brief of *E. B. & R. E. Bundy*, and for the defendant in error on that of the *Attorney General*.

- MARSHALL, J. The first proposition submitted by counsel for the plaintiff in error, the truth of which they seek to demonstrate, is that the circuit court had no jurisdiction to sentence the accused or do anything in the case after the return of the record to that court. In support thereof our attention is called to the following sections of the Statutes of 1898:

' SECTION 4720. Any person who shall be convicted of an offense before the circuit court, being aggrieved by any opinion, direction or judgment of the court in any matter of law, may allege exceptions to such opinion, direction or judgment, which exceptions being reduced to writing in a summary mode and presented to the court at any time before the end of the term, and if found conformable to the truth of the case, shall be allowed and signed by the judge, and thereupon all further proceedings in that court shall be stayed, unless it shall clearly appear to the judge that such exceptions are frivolous, immaterial or intended only for delay; and in that case judgment may be entered and sentence awarded in such manner as the judge may deem reasonable notwithstanding the allowance of such exceptions.

' " SECTION 4721. If upon the trial of any person who shall be convicted in said circuit court any question of law shall arise which, in the opinion of the judge, shall be so impor-

tant or so doubtful as to require the decision of the supreme court he shall, if the defendant desire it or consent thereto, report the case so far as may be necessary to present the question of law arising therein, and thereupon all proceedings in that court shall be stayed.

"Section 4722. Any person not being accused of an offense punishable by imprisonment for life, who shall file exceptions or for whose benefit a report shall be made by the judge as is provided in the two preceding sections, may recognize to the state of Wisconsin in such sum as the judge shall order with sufficient sureties, for his personal appearance at the supreme court at the then next term thereof, and to enter and prosecute his exceptions with effect, and abide the sentence thereon, and in the meantime keep the peace and be of good behavior.

"Section 4723. If any person so filing exceptions or desiring a report to be made by the judge shall not so recognize he shall be committed to prison to await the decision of the supreme court, and in that case the clerk of the court in which the conviction was had shall file a certified copy of the record and proceedings in the case in the supreme court, and the court shall have cognizance thereof, and consider and decide the questions of law, and shall render such judgment and award such sentence or make such order thereon as law and justice shall require; and if a new trial is ordered the cause shall be remanded to said circuit court for such new trial, but the proceedings here prescribed shall not deprive any party of his writ of error for any error or defect appearing of record."

It is contended with reason that such provisions of law clearly contemplate that, upon questions being certified to this court to be answered pursuant thereto, the jurisdiction of the circuit court is at an end unless the cause be remanded for a new trial by order of the appellate court. That is the literal meaning of the statutes, and it may be said that they are too plain to be open to any other meaning. The first two sections indicate that the certification of questions to this court by the circuit court transfers the cause for all purposes except that of a new trial when necessary; so that, upon the questions being determined, with the one exception mentioned, this court must conclude the trial and pass

sentence upon the prisoner as a court of original jurisdiction. In harmony with that idea sec. 4722 contemplates appearance of the accused, if on bail, personally in this court, for the prosecution of his exceptions and for all other purposes of the conclusion of his trial. Sec. 4723 provides in mandatory language that if no new trial be necessary as a result of the decision here, this court, as a tribunal of original jurisdiction, shall render judgment. Though such statutes have been, in form, in force as written ever since the state was admitted into the Union, and were a part of the territorial laws, no one, so far as the records of this court show, has ever before contended that they should or can be so enforced under our constitutional system, and they have never had their full literal effect, so far as we are advised, since the constitution was adopted. They were taken from the statutes of Massachusetts, and appear first here in the Territorial Revised Statutes of 1839 [Page 377, §§ 7–10]. They existed in the parent state as early as 1822 and were construed there in 1840 in *Comm. v. Peck*, 1 Met. 428. The procedure required was suited to the judicial system there prior to 1859, because the supreme judicial court of Massachusetts had original jurisdiction to try and sentence offenders and to grant new trials by the original presentation of reasons therefor. The law of Massachusetts was changed in 1859 in respect to the method of removing causes to the supreme court so as to enable trial courts to transmit questions to the former for decision, the latter retaining jurisdiction of the cause for further proceedings upon such decision being rendered. *Comm. v. Field*, 11 Allen, 488. However, by some oversight, existing statutes were not repealed; but they were so out of harmony with the new system that when the mistake was brought to the attention of the court it held that they were repealed by implication so far as the two systems could not be reasonably harmonized. We have no room to decide, because of any change in the

jurisprudence of this state in criminal cases since the adoption of the statutes in 1849, that the statutes in question have been repealed to any extent, so they must be regarded as in force to-day so far as legislative power existed to give effect to them at the time of their enactment.

That an attempt was made, by the adoption of the territorial statutes by the state legislature, to confer upon this court some original jurisdiction in the trial and disposition of criminal cases, cannot be doubted. The practice under similar statutes in Massachusetts was then well understood, they having been definitely construed by its supreme court in 1840, as we have seen. That court may still exercise such jurisdiction if it sees fit, as indicated by the decision in *Comm. v. Scott*, 123 Mass. 418, where the court said, speaking of the effect of the adoption of the new system in 1859 and the oversight of failing to repeal the old statutes:

" Under the existing statutes, the appeal, bill of exceptions or report does not transfer to this court the whole case, but only the question of law to be revised, unless the court, upon deciding that question, sees fit to give further directions or to order that the record of the whole case be brought to this court for trial or other disposition thereof. So much of the General Statutes, re-enacting provisions of earlier statutes, as might seem, taken by itself, to be susceptible of a broader construction, is controlled and limited by the clear enactments of the statutes just referred to, establishing a uniform system."

It follows from what has been said that, so far as we cannot find, within the scope of the granted powers of this court contained in the constitution, authority to exercise the power required to give effect to the statutes under consideration, they must be held inoperative. Sec. 3, art. VII, of the constitution, with certain exceptions not material to this case, provides that the supreme court "shall have appellate jurisdiction only."

" The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue

writs of *habeas corpus, mandamus*, injunction, *quo warranto, certiorari*, and other original and remedial writs, and to hear and determine the same."

In that, as has been decided, there are three separate and distinct grants of jurisdiction: "(1) the appellate jurisdiction; (2) the superintending control over inferior courts; and (3) the original jurisdiction to be exercised by certain writs." *Att'y Gen. v. Blossom*, 1 Wis. 317; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *State ex rel. Fourth Nat. Bank v Johnson*, 103 Wis. 591. What the general nature of the limits of those distinct grants of power is, is a judicial question, and has been answered and the law in regard thereto firmly settled by the decisions of this court. Appellate jurisdiction extends only to the *revision of the decisions of inferior courts. State v. Brownell*, 80 Wis. 563; *Hubbell v. McCourt*, 44 Wis. 584. The power of superintending control is the power to "control the course of ordinary litigation in inferior courts," as exercised at common law by the court of King's Bench, and by the use of writs specifically mentioned in the constitution and other writs there referred to or authorized. The third grant of power is one inferred from the independent grant to issue certain writs. It is said that such specific grant to issue writs was given for the purposes of jurisdiction, and that it extends to the protection of "the sovereignty of the state, the preservation of the liberty of the people, and the security of the rights of its citizens." The jurisdiction in that regard is strictly of an original nature, but, manifestly, it cannot be resorted to, properly, in the mere administration of a statute; so we need not consider it in respect to the subject under discussion. *State ex rel. Fourth Nat. Bank v. Johnson, supra.*

Now, obviously, while the legislature may devise new methods by which this court may exercise that part of its jurisdiction which is not dependent by the constitution upon a particular method there indicated, circumscribing the juris-

diction itself, as before indicated, there can be no legislative
extension or limitation of either of the powers included
within the three specific grants we have mentioned. A
legislative enactment, so far as it purports to do that, is to
that extent manifestly void. *Klein v. Valerius,* 87 Wis. 54.
Appellate power may reasonably save the statutes under
consideration so far as they contemplate a revision here of
the decisions of trial courts on questions certified up for that
purpose. It is not perceived how the power of superintend-
ing control can be resorted to at all to give effect to such
statutes. The mere administration of a statute is entirely
foreign to the scope of that power as it existed before the
constitution was adopted. Its scope, as then understood, is
identical with its scope under the constitution. *State ex rel.
Fourth Nat. Bank v. Johnson, supra.* The term "superin-
tending control" then had a well-defined meaning, and it,
and none other, was carried into the constitution by the
framers thereof. In order to correctly understand that mean-
ing, we must view the constitution from the standpoint of
its framers. If we were not anchored firmly to the com-
mon-law idea of the extent of mere superintending control
of one court over another, as distinguished from appellate
jurisdiction, we should drift at once into confusion in respect
to the scope of the authority of this court. While the true
limits of judicial power must be jealously guarded and
firmly maintained, it would be as dangerous to extend as to
limit the same, by giving to the language in which the juris-
diction was granted a meaning different from that which
was in mind when the grant was made. The power of super-
intending control, as has been decided and before indicated,
has to do only with controlling inferior courts in the exer-
cise of their jurisdiction by the use of instruments mentioned
specifically in the constitution or authorized thereby; the
same or similar means by which, before the adoption of our
system, that power was exercised by the king's court under

the English system of jurisprudence. That did not include the exercise of any mere advisory power, such as that of advising inferior courts in the exercise of their jurisdiction by passing upon doubtful questions, arising in the course of litigation, in advance of any decision thereof by such courts.

In what has been said it will be easily seen that no power rests here to pass sentence upon a conviction in a criminal case, or to exercise any original jurisdiction in such cases for any of the purposes of the trial thereof. It follows necessarily that no part of the legislation under consideration can be preserved, except that which may reasonably fall within the appellate jurisdiction of this court,— the jurisdiction to revise decisions made by inferior courts and correct errors in such decisions, leaving the causes in which such decisions were rendered, for all the purposes of original jurisdiction, undisturbed except in so far as restraint upon their procedure may be necessary in order that final judgment may be made to await the decision of this court in matters appealed here in the manner indicated in the statutes — the certification thereof to this court as contemplated by such statutes according to the settled practice thereunder. *State v. Clifford*, 58 Wis. 113. So far as Stats. 1898, secs. 4720–4723, inclusive, purport to otherwise authorize disturbance of proceedings in trial courts in the exercise of original jurisdiction in criminal cases, they must be held inoperative.

There can be no doubt but that the territorial system of jurisprudence in criminal cases, adopted from Massachusetts, would not have been carried into the state statutes had the legislature appreciated the inconsistency thereof with the constitutional grants of jurisdiction made to this court. The oversight in doing so, in view of the constitutional limitations rendering full effect thereof impossible, was quite like the oversight in Massachusetts in 1859, of adopting a new system for the exercise of appellate juris-

diction inconsistent in many respects with the old one, yet leaving the ancient system in form upon the statute books to be restrained in the manner indicated in *Comm. v. Field*, 11 Allen, 488.   It seems strange that the oversight occurred here, and stranger still that our statutes have passed through four revisions, covering a period of over half a century, without its having attracted sufficient notice to cause it to be remedied or the law to be challenged in this court.

The contentions that the circuit court lost jurisdiction of this cause upon the submission of the questions therein to this court to be decided, and that the trial of the cause should have been concluded and sentence upon the conviction of plaintiff in error, under the circumstances, passed here, and that there was no way for the lower court to regain jurisdiction of the cause after the certification of questions to this court, except by special order entered here remanding the cause with directions as to further proceedings, cannot be sustained, because, as we have indicated, the statutes, so far as they in form support such contentions, are inoperative.   The cause against the plaintiff in error was not removed to this court by the proceedings under such statutes.   It remained in the circuit court pending such proceedings, and upon their conclusion and official notification thereof to such circuit court, it rightly proceeded to conclude the cause by sentencing the plaintiff in error upon the conviction.

The second point submitted is that the court refused to instruct the jury as follows:

" In view of the prosecuting attorney's statement that the jury cannot consider the action of Louise Herman at this time, the defendant asks the court to charge: (1) The jury will consider the action of the prosecuting witness on the day in question as bearing upon the question of previous chaste character."

It is utterly impossible, as suggested by the attorney general, for this court to determine from the record whether the

refusal of that instruction was prejudicial to the accused or not, since there is nothing preserved in the bill of exceptions indicating that the district attorney made any statement to the jury calling for the instruction. In the absence of some special circumstance rendering it necessary, it is not the duty of the trial court to single out any particular part of the evidence or any particular circumstance appearing therefrom and draw the attention of the jury thereto. It was manifestly the duty of the jury to consider all the evidence bearing upon the issues in the cause. It seems that they could not reasonably have failed to understand that from the general instructions given by the court. No special instruction to that effect appears to have been requested.

The third point suggested is that the evidence was insufficient to establish the previous chaste character of the female partner in the crime. We have examined the evidence and perceive no good reason for disturbing the verdict of the jury on that question. The age of the girl was a strong circumstance against the accused. There were other circumstances which the jury might reasonably have considered in connection with the tender years of the girl, sufficient to establish her purity of character prior to the commission of the offense with which the accused was charged, notwithstanding they did not believe she testified truthfully as to all the circumstances of her criminal association with him. We will rest the case on this point without saying more. It is well not to encumber the books with details of testimony in such cases, where that can properly be avoided.

The last point suggested by counsel for plaintiff in error is that the verdict does not sustain the judgment because, whereas the information contains two counts, the verdict was general and the judgment was rendered as if the verdict related only to the offense of fornication. The learned counsel for plaintiff in error say that only the charge of fornication was in fact submitted to the jury, and that the

verdict can be rendered certain by reference to such submission if the charge of the court can be considered as a part of the record, but that it cannot. Why not? Counsel closed their argument without answering that question. We confess inability to answer it. The charge was incorporated in the bill of exceptions and duly made a part of the record of the trial for appellate purposes, and we must assume that the journal of the court is in harmony therewith in the absence of any showing to the contrary.

*By the Court.*— The judgment of the circuit court is affirmed.