HIRTE, Respondent, vs. EASTERN WISCONSIN RAILWAY & LIGHT COMPANY, Appellant.

*January 30—February 23, 1906.*

*Appeal and error: Verdict, when disturbed: Street railways: Negligence: Ejection of passenger: Evidence: Remarks by court: Prejudicial error: Instructions to jury: Excessive damages.*

1. On appeal the ruling of the trial court refusing to set aside a verdict will only be reversed where there is no evidence to support it, or where, though there is some evidence in its support, still the great weight of the evidence is against it, and that weight is so reinforced by all the reasonable probabilities and inferences that it becomes overwhelming.

2. In an action against a street railway company to recover damages for negligence in forcibly ejecting a passenger while the car was in motion, the evidence, stated in the opinion, is *held* sufficient to show such negligence, and also to sustain an answer to a special question submitted to the jury as to the rate of speed of the car at the time the passenger was ejected.

3. In an action against a street railway company to recover damages for negligence in forcibly ejecting a passenger while the car was in motion, plaintiff's counsel, in attempting to show notice to the defendant's officers shortly after the injury, asked a question: "What did you say to Mr. G. about this trouble?" and, on objection being made, the court remarked: "You are seeking to show that you informed the company of the improper conduct of the conductor soon after the accident happened." *Held,* that the use of the word "improper," while ill advised, did not constitute prejudicial error, since it was patent from the record that the court simply meant "the conduct which you claim was improper," and therefore the jury could not have been misled.

4. In an action against a street railway company to recover damages for negligence in forcibly ejecting a passenger while the car was in motion, an instruction, in substance, that if the plaintiff was using profane and insulting language or was guilty of boisterous or riotous conduct on the car, or was threatening to assault the conductor, the conductor was justified in putting him off without using unnecessary force, is not ren-

dered erroneous by adding: "Provided the car had come to a standstill, but not if it was still in motion."

5. In such case requested instructions bearing on plaintiff's conduct, stated in the opinion, are *held* to be not well drawn, and, in so far as they state correct principles, to be fully and carefully covered by the general charge.

6. In an action against a street railway company to recover damages for negligence in forcibly ejecting a passenger while the car was in motion, the evidence, stated in the opinion, is *held* sufficient to justify a finding by the jury that an ulcer on plaintiff's leg was caused by the fall at the time of the ejection.

7. In such case the verdict is *held* not to be excessive.

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action to recover damages for gross negligence in forcibly ejecting the plaintiff from a street car while in motion. The evidence upon the trial showed that the plaintiff, a young man twenty-five years of age, was a passenger on one of the defendant's street cars in the city of Fond du Lac on the evening of September 21, 1903. The car was going in a northerly direction, and the plaintiff desired to get off at Lake Shore Drive; and an altercation occurred between plaintiff and the conductor of the car, one Judkins, before the car reached the plaintiff's destination. The evidence for the plaintiff tended to show that before the car stopped at Lake Shore Drive the conductor, Judkins, shoved or pushed the plaintiff off from the car while it was moving at the rate of five or six miles per hour, and that the plaintiff fell on his back and was injured. The defendant's evidence tended to show that the car had stopped at Lake Shore Drive, and that the plaintiff refused to get off, although that was his destination, and that thereupon the conductor took him by the collar and put him off, not using unnecessary force, and that after getting off the plaintiff stood for a moment and then fell down. There was some evidence that the plaintiff was partially intoxicated. No claim was made to recover punitory damages. In addition to a general verdict the court on its

own motion submitted two special questions to the jury, and the verdict, as returned, was as follows:

"We, the jury in the above-entitled action, find in favor of the plaintiff, *Eli Hirte,* and against the defendant, *Eastern Wisconsin Railway & Light Company,* and we assess the plaintiff's damages at the sum of one thousand six hundred ($1,600) dollars. First question: Was the car in motion at the time when plaintiff was pushed off from it by the conductor at Lake Shore Drive? If so, at what rate of speed was the car then moving? *Answer.* Yes; three to four miles per hour. Second question: Is the diseased condition of plaintiff's left leg the natural and probable consequence of an injury sustained by him by reason of having been pushed off from the car at Lake Shore Drive? *A.* Yes."

The defendant made the proper motions for nonsuit at the close of the plaintiff's evidence, also for the direction of a verdict at the close of the entire evidence, also for judgment for the defendant *non obstante,* also to change the answers of the verdict and render judgment thereon for the defendant, also to set aside the verdict and to grant a new trial; all of which motions being overruled, judgment was rendered for the plaintiff on the verdict, and the defendant appeals.

For the appellant there were briefs by *Maurice McKenna,* attorney, and *John I. Thompson,* of counsel, and oral argument by *Mr. McKenna.*

For the respondent there was a brief by *Husting & Husting,* and oral argument by *B. A. Husting.*

WINSLOW, J. The appellant strenuously claims that this court should set aside the verdict because it is against the clear preponderance of the evidence. This court does not set aside verdicts for that reason. This court will only reverse the ruling of the trial court refusing to set aside a verdict where there is no evidence to support the verdict, or where, "though there be some evidence in its support, still the great weight of the evidence is against it, and that weight is so reinforced by

all the reasonable probabilities and inferences that it becomes overwhelming." *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 91 N. W. 666. This is not such a case. While there was considerable evidence tending to show that the conductor did not recklessly push the plaintiff off from the car while in motion, there was much evidence tending to prove that such was the fact, and there are no physical facts which render the latter version of the occurrence incredible or against all the reasonable probabilities. Nor can it be said that the finding to the effect that the car was moving at the rate of three or four miles per hour is a mere conjecture, unsupported by any evidence. It is true that no witness testified to these exact figures, and that the only direct evidence on the point is by two or three witnesses that in their opinion the car was moving somewhere from five to ten miles per hour. This, however, was merely opinion evidence, and there was evidence in the case to the effect that the car moved twenty or twenty-five feet, or about a car length, after the plaintiff was put off, which evidence manifestly bore legitimately on the question of the rate of speed, and from which the jury might well conclude that the car was moving at a less rate of speed than that directly testified to by the witnesses.

The plaintiff attempted unsuccessfully, upon the trial, to show that notice was given to one of the defendant's officers shortly after the injury of the act of the conductor, and in course of this attempt the following question was asked of the plaintiff's father: "What did you say to Mr. Grover about this trouble?" Objection being made to this question the court said: "You are seeking to show that you informed the company of the improper conduct of the conductor soon after the accident happened?" To which question plaintiff's counsel answered in the affirmative. Defendant's counsel now contends that this characterization of the conductor's act as "improper" was calculated to impress the jury with the idea that the court was of opinion that the conductor's act was un-

justifiable, and that hence it was prejudicial error. The remark of the court was certainly ill advised. Great care should be taken by trial courts not to make any remark in the presence of the jury which can be construed as indicating the court's opinion upon a question of fact. We cannot think, however, that the use of the word "improper" in the question asked by the court could be reasonably construed by the jury as an indication of any conclusion of the trial court. The question was addressed only to plaintiff's counsel, who, of course, was at all times vigorously contending that the conductor's act was improper, and we think it was so patent that the court simply meant "the conduct which you claim was improper" that the jury could not have been misled by it.

The court carefully charged the jury, in substance, that if the plaintiff was using profane and insulting language or was guilty of boisterous or riotous conduct on the car, or was threatening to assault the conductor, then the conductor was justified in putting him off without using unnecessary force, providing the car had come to a standstill, but not if it was still in motion. Complaint is made because the court several times, in course of the charge, inserted this proviso, and reference is made to the *Bolin Case,* 108 Wis. 333, 84 N. W. 446, where it was held that there might be circumstances under which a railway company would not be obliged to wholly stop its train to require a wilful trespasser to leave it. The case manifestly has no application, and we are referred to no case where it is held that a passenger lawfully riding on a train or car, and not engaged in an assault, can be lawfully ejected while the train or car is in motion. The charge was manifestly right.

Complaint is also made because the court refused to give the following instruction, asked for by the defendant:

"A passenger on a street railway car is entitled to protection only so far as his own conduct merits it, and the defendant was not bound to protect him against the usual and

probable results of his own misbehavior, if, under all the evidence in the case, you find that the defendant was guilty of any."

This instruction is not well drawn and has little legitimate bearing on the evidence. So far as it states a correct principle it is fully and carefully covered by the general charge. The same remark applies to the remaining requests for instructions made by the defendant which were refused by the court.

It is further claimed that the damages were excessive, and this claim is based largely upon the contention that the evidence was not sufficient to entitle the jury to find that the diseased condition of the plaintiff's left leg was proximately caused by the ejection from the car. It appears that at some time after the occurrence a traumatic ulcer developed on the plaintiff's left leg, which became serious and necessitated an operation upon the leg and the treatment thereof for ten weeks in a hospital, besides incapacitating him from labor of any kind up to the time of the trial, which occurred in March, 1905. The testimony as to the exact time when this ulcer developed is in some confusion. There is, it is true, evidence tending to show that it did not develop until some three months after the ejection from the car, and some of the plaintiff's own evidence seems to indicate that such was the case. However, he also says that there was pain at the place since the day of his ejection, and the attending physician testifies directly that a few days after the occurrence the left leg became swollen from knee to ankle, that inflammation set in in a week or ten days after that, and increased until it broke out and became an ulcer, and that he continuously dressed and treated it until it became an open sore and an operation became necessary. As it was an undisputed fact that the ulcer was traumatic in its origin, and that the plaintiff was in bed from the time of the ejection from the car for a considerable time, we think there was sufficient evidence upon which the

jury might find that the ulcer was caused by the fall at the time of the ejection. If such was the case, the damages can-not be held excessive.

*By the Court.*—-Judgment affirmed.

MARSHALL and KERWIN, JJ., dissent.