SALCHERT, Respondent, vs. REINIG, Appellant.

*February 1—March 31, 1908.*

(1, 2) *New trial: Directing verdict: Discretion of court: Breach of promise of marriage.*    (3) *Plaintiff's uncorroborated statement.* (4, 5, 14) *Evidence: Sufficiency.*    (6) *Plaintiff's refusal to sign deposition.*    (7) *Witness: Impeachment.*    (8) *Evidence of de-fendant's wealth.*    (9) *Harmless error.*    (10) *Pleading: Rescission or abandonment of contract.*    (11–13) *Damages: Whether excessive: Separate damages for seduction.*    (14) *Libidinous re-lations before promise of marriage.*    (15) *Chastity.*    (16) *Cor-recting error by reducing damages.*

1. Although the trial judge is convinced that some credible evidence supports the verdict, if he is persuaded that such evidence is relatively so weak and unconvincing when compared with the adverse evidence that there is danger that the verdict will work injustice, he is vested with a broad discretion to protect against such peril by granting a new trial.

2. Whether the trial court should direct a verdict, or whether this court on appeal may in effect do so, depends upon whether there is any credible evidence which, in the most favorable view and granting all reasonable inferences and construction in favor of the conclusion of the jury, tends to support the verdict.

3. Where plaintiff, in an action for breach of promise of marriage, testifies positively to the fact of a promise of marriage, this suffices of itself, without corroboration, to support a verdict in her favor on that subject, unless rendered incredible by other evidence or by such a conflict with the uniform course of nature or with fully established physical facts that no reasonably intelligent man could give it credence.

4. In such an action the improbability that a man in defendant's rank in life would engage himself in marriage to plaintiff, and

the fact that plaintiff's conduct was variant from that which usually accompanies the relations between engaged persons, is not so inconsistent with plaintiff's testimony of the making of the promise as to require this court to set aside the finding in her favor.

5. The evidence as to whether the agreement between plaintiff and her counsel was champertous is *held* sufficient to sustain the negative finding of the trial court.

6. The refusal of plaintiff to sign, at first, her deposition taken before trial, *held* not prejudicial to defendant, as she did sign it before trial and defendant made full use of it.

7. In an action for breach of promise of marriage it was not error to exclude a question to plaintiff on cross-examination as to whether she had promised to give C. a portion of her damages, and evidence that C. had stated to witnesses that plaintiff had promised him a part of her damages, where plaintiff did not call C. as a witness, and when called by defendant he gave no evidence tending to support plaintiff's case.

8. In such an action the admission of the will of defendant's father, under which he was a beneficiary, and the inventory accompanying it which also bore defendant's signature and was, therefore, his own admission, was *held* proper as tending *prima facie* to show the amount of his wealth.

9. The refusal of the trial court to direct the jury to consider certain classes and items of evidence, the refusal to amplify his statement of the rule regarding the burden of proof, to adopt the words suggested by defendant, or to illustrate the rule by reference to specific classes or items of evidence, is *held* not to be prejudicial error.

10. A general denial in an action on a contract will not put in issue the rescission or abandonment of such contract, which, occurring after the making of the contract, should be pleaded in avoidance.

11. In an action for breach of promise of marriage a verdict of $10,000 damages, where defendant was beneficiary of a one-third interest in an estate of $200,000 and had other property, was not excessive.

12. In an action for breach of promise of marriage, where it is alleged that by virtue of such promise defendant seduced plaintiff, the court instructed the jury that, in answering the question of the special verdict asking them to find the amount of plaintiff's damages for the breach of the promise of marriage, they should fix the damages independent of the seduction, describing the elements of such damages as "benefits and advantages

lost to her by defendant's breach of contract, together with such sum as will compensate her for such humiliation and mental suffering as resulted from defendant's rejection and repudiation of her." On the question of seduction he also instructed them to fix such sum as would compensate her for the "*additional injury resulting from the seduction,*" which would include loss of virtue, injury to reputation, and her mental suffering following such loss and such injury. *Held* error, as the instruction failed to limit the effect of the seduction to the enhancement of damages due to the breach of promise, and authorized compensation for the seduction as a separate and independent injury.

13. In such an action the fact of seduction brings in no additional element of damage, but at most serves to enhance the amount of those elements which, independently, belong in the action for the breach of promise.

14. If in such an action it appear that plaintiff has associated herself in the sexual act with defendant in a manner and by conduct which excludes the existence of any barrier of virtue or chastity of character needing to be overcome by seductive arts, and that she continued such intercourse at short intervals without suggestion of any repentance or reformation or other break in its continuity, the mere fact that in the course thereof and after the illicit relations are established there intervenes a promise of marriage will not support a finding that the seduction was accomplished by such promise, although plaintiff may have testified that she continued the libidinous relations by reason of it.

15. Where damages resulting from breach of promise of marriage are sought to be enhanced by the fact that plaintiff, relying on such promise, was seduced by defendant, although she may at one time have lapsed from physical chastity, if it affirmatively appear that she has reformed and at the time of the offense maintained a habit of sexual virtue, she may be deemed chaste within the meaning of the law.

16. Where a verdict was awarded for $10,000 damages for breach of promise of marriage and $5,000 for additional damages due to seduction, the error of including additional damages for the seduction as a separate wrong may be corrected by eliminating from the recovery the latter sum.

Appeal from a judgment of the circuit court for Fond du Lac county: Chester A. Fowler, Circuit Judge. *Modified and affirmed.*

Action for breach of promise to marry, alleged to have been made about the 1st of August, 1902, aggravated by seduction accomplished in reliance upon said promise, and followed by nearly three years of frequent illicit connection between the parties. The defendant denied any promise of marriage, but admitted the establishment and continuance of such illicit relations upon the basis of a cash payment on each occasion thereof. The answer pleaded was a simple general denial. The jury, by special verdict, found that about the 1st of August defendant did offer or promise to marry the plaintiff and that she accepted the offer; that said offer or promise was not conditioned upon sexual intercourse or upon her becoming pregnant by him; that plaintiff held herself ready and willing to marry the defendant until his wedding with another woman in April, 1906; that the time between the making of such promise and said April, 1906, was a reasonable time for the engagement to continue without marriage taking place; assessed the damages for breach of promise, regardless of any question of seduction, at $10,000; and by the eighth answer found that the defendant seduced the plaintiff "under such promise;" and by the ninth answer that the damages by reason of the seduction were $5,000. Motions for nonsuit and for direction of verdict in favor of defendant were duly made and overruled, with exception, and after verdict motion was made to change the answers of the several questions and to render judgment for the defendant, and if that be denied that the verdict be set aside and a new trial granted; all of which motions were denied, over exception, and judgment rendered for both sums of damages included in the special verdict, to wit, $15,000, from which judgment the defendant appeals.

For the appellant there was a brief by *P. H. Martin*, attorney, and *Maurice McKenna* and *Doyle & Hardgrove*, of counsel, and oral argument by *Mr. T. L. Doyle, Mr. J. G. Hardgrove*, and *Mr. McKenna*.

For the respondent there was a brief by *J. E. O'Brien,* attorney, and *Duffy & McCrory,* of counsel, and oral argument by *Mr. O'Brien* and *Mr. J. H. McCrory.*

The following opinion was filed February 18, 1908:

Dodge, J.    Appellant's most urgent contention is that the trial court erred in refusing to direct verdict for defendant, or to insert answers in the special verdict negativing the promise of marriage, and that he also erred in not setting aside the verdict as opposed by great weight and preponderance of evidence.    The action of a trial court in the second respect is an exercise of discretion with which the appellate court will not interfere.    Although convinced that some credible evidence supports the verdict, if the trial judge is persuaded that such evidence is relatively so weak or unconvincing, when compared with the adverse evidence, that there is danger that the verdict will work injustice, he is vested with a broad discretion to protect against such peril by granting the parties a new trial.    *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 91 N. W. 666; *Peat v. C., M. & St. P. R. Co.* 128 Wis. 86, 107 N. W. 355.    But when this stage has been passed, the question whether the court should direct a verdict, or whether this court on appeal may in effect do so, depends merely upon whether there is any credible evidence which, in the most favorable view and granting all reasonable inferences and construction in favor of the conclusion of the jury, tends to support the verdict.    To declare sworn testimony of a fact incredible we must be convinced that it is so in conflict with the uniform course of nature or with fully established physical facts that no reasonably intelligent man could give it credence.    *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Hirte v. Eastern Wis. R. & L. Co.* 127 Wis. 230, 106 N. W. 1068; *Peat v. C., M. & St. P. R. Co.* 128 Wis. 86, 107 N. W. 355.    In this case the plaintiff testified positively to the fact of a promise of mar-

riage, and of course this suffices of itself to support the verdict on that subject unless rendered incredible by other evidence in the sense above stated. No corroboration is required. *Giese v. Schultz,* 65 Wis. 487, 493, 27 N. W. 353. It is opposed in the first instance by the categorical denial of the defendant, but this simply presents a case of two conflicting witnesses, one or the other of whom may be credited by a reasonable person according to their appearance, interest, fairness, and manner of testifying. While the plaintiff is involved in some measure of contradiction as to the details of the interview in which the promise was made, so also is the defendant's testimony permeated by contradictions, uncertainty, and evasion. Throughout his examination under sec. 4096, Stats. (1898), through many consecutive answers relating to the most material events, he contented himself with denying memory or knowledge, and later testified thereto fully and in detail, thus placing his testimony at one time in direct contradiction therewith at another. Again, there is the asserted improbability that a man in his rank of life would engage himself in marriage to the plaintiff, and there is conduct on her part considered by the defendant's attorney as variant from that which usually accompanies the relations between engaged persons. But we can see nothing in this more than mere improbability, and not enough to make it impossible for an ordinarily intelligent person to believe in the existence of the promise of marriage notwithstanding such conduct. The unsavory character of the evidence descriptive of the relations of the parties must make it suffice to state our conclusion that after careful examination thereof we cannot deem any of the facts disclosed as so inconsistent with plaintiff's testimony as to this promise as to render it so incredible that it might not by reasonable men be believed, and so that it obviously furnishes support for that part of the verdict.

We can discover nothing in the opinion of the trial court

which indicates that he failed to appreciate his duty upon the motion for a new trial when that opinion is considered in its entirety, although there are some remarks therein which, if disassociated from the context, might indicate that he thought he was bound to overrule that motion if there was any evidence supporting the verdict.

Error is assigned with some confidence upon the contention that the agreement between plaintiff and her attorney was champertous. She had apparently answered on her examination under sec. 4096 that she had agreed to give him a certain proportion of the recovery and expected him to pay the court costs. The latter answer she attempted to correct before signing her deposition, and made explanation more or less satisfactory of misunderstanding such statement. Testimony was given by the attorney and others as to the exact terms of that agreement which it was claimed was later reduced to writing; and that it required plaintiff to pay costs and expenses; also that she had done so. The whole evidence was before the court. His decision that the contract actually made was not champertous was fully borne out by at least some of the evidence, which was, at most, thrown in conflict by plaintiff's answer above stated. We cannot think that there was any clear preponderance against the decision of the trial court on what were the terms of that agreement. *Lyttle v. Goldberg,* 131 Wis. 613, 111 N. W. 718.

Several of the assignments of error present comparatively trivial grounds of complaint in which we can discover no error prejudicial to the appellant. These include the refusal of plaintiff to sign her deposition at first; but she did sign it before trial and defendant made full use of it. Another is the exclusion of a question to the plaintiff on cross-examination whether she had promised to give one Chesebro a portion of her damages. While it might not have been error to admit this in the broad field of cross-examination, we discover no error in excluding it nor any prejudice to the defendant.

She did not call Chesebro as a witness, and when called by the defendant he gave no evidence tending to support the plaintiff's case. In connection with the foregoing there is assigned error upon the refusal to permit third persons to testify to certain statements of Chesebro to them to the same effect. This was properly enough excluded on the grounds already stated, but also for the reason that it was hearsay, calling for unsworn statements of one not a party to the action. It of course was not admissible as impeachment of Chesebro, for he had not been called as a witness by the plaintiff. Admission of the will of defendant's father, under which he was beneficiary, was certainly proper as tending *prima facie* to show the amount of his wealth. The inventory accompanying it was admissible upon the same ground, and more especially as defendant's own admission, it bearing his signature. These documents tended to show him a beneficiary to the extent of one third of an estate inventoried at some $200,000, and while of course not conclusive were *prima facie* evidence. Had there been debts or any other circumstance to contradict such conclusion they were easy of proof by the defendant. Evidence of the plaintiff's general reputation for chastity in the community was admitted over objection, but the trial judge by his charge confined the effect or relevancy of any such fact to the question of damages by reason of seduction; hence, as we shall see, it can have no bearing upon the conclusion reached in the case.

A large number of requests to instruct are called to our attention by the appellant's brief, with the claim that their refusal is error. Many of them are directions to the jury to consider certain classes or items of evidence. The omission to do this can hardly ever be reversible error. It is a field into which courts can seldom enter without causing dissatisfaction to one side or the other. A comment on one item of evidence frequently demands in immediate connection therewith reference to many other items in order that it may not

mislead the jury.  *Seiler v. State,* 112 Wis. 293, 303, 87 N. W. 1072; *Horr v. C. W. Howard Co.* 126 Wis. 160, 165, 105 N. W. 668. We can find no error adverse to the defendant in declining instructions of this sort in view of the fair treatment of the evidence in the charge in fact given.  Other requests were for amplification or modification of the rule with reference to the burden of proof; but the general rule was accurately stated by the court, hence no error was committed in declining to adopt the words suggested by the defendant or to illustrate the rule by reference to specific classes or items of evidence.  A requested instruction attempting to embody the rule *falsus in uno, falsus in omnibus* was correctly embodied in the charge.

Certain instructions were requested to the general effect that if, from the conduct of the parties, the jury believed the contract of marriage to have been abandoned, they should answer "No" to the fifth question, which inquired whether she had held herself ready and willing to marry the defendant, and the defendant assigns error upon their refusal and upon the refusal of the court to submit a question whether the contract had been abandoned or rescinded.  Rescission or abandonment of this contract was not in the case.  The answer was a mere general denial, and the defense of rescission or abandonment would have involved facts occurring after the making of the contract, and should have been pleaded in avoidance thereof.  Bliss, Code Pl. (3d ed.) §§ 327, 352; *McKyring v. Bull,* 16 N. Y. 297; *Schaus v. Manhattan G. L. Co.* 14 Abb. Pr. N. s. 371.

It is further complained that the court framed his charge so that certain paragraphs thereof applied to several questions and were general.  These paragraphs related to the burden of proof, the duty of the jury in weighing evidence and measuring the credibility of witnesses, the elements constituting a contract of marriage applicable to several questions and definitive of terms therein used.  In this there is

no error. *Lyle v. McCormick H. M. Co.* 108 Wis. 81, 84 N. W. 18; *Banderob v. Wis. Cent. R. Co.* 133 Wis. 249, 113 N. W. 738. Nor can we discover, as appellant contends, any tendency in the instructions to inform the jury of the effect of any of the answers in the verdict, or to state general rules of law with their effect on the rights of the parties.

We cannot think the contention that the damages are excessive worthy of extended consideration by the appellate court after adverse ruling below. Ten thousand dollars for the loss of a marriage to a man of the wealth which evidence at least tended to ascribe to the defendant, after an engagement of some four years, is well within the limits of verdicts which have been sustained. The translation into terms of money of those peculiarly indefinite damages which result from a breach of such a contract is so a matter of estimate that courts on appeal are extremely reluctant to interfere with the conclusion of the jury thereon.

We have gone over all the assignments of error relating to those portions of the recovery other than for seduction, at least so far as seems to be justified by their importance, and find none which can in our opinion warrant any reversal up to the point of the recovery of damages for the breach of promise unaffected by consideration whether the seduction of the plaintiff was accomplished in reliance upon the promise of marriage. When the court came to the question of seduction he instructed the jury that if they found it they should, in answer to the ninth question, fix such sum as will compensate her for the additional injuries resulting from the seduction which would *include* loss of virtue, injury to reputation, and her mental suffering following from such loss and such injury, and this too after directing them to include, in response to the seventh question, the amount of her damages for the breach of the promise of marriage independent of seduction, the elements of which he described as "benefits and advantages lost to her by the defendant's breach of the

contract, together with such sum as will compensate her for
such humiliation and mental suffering as resulted from de-
fendant's rejection and repudiation of her." The ninth
question could have been no broader had plaintiff in form
stated two causes of action in her complaint, one for breach
of promise and another for seduction as an independent cause
of action. But by the common law, which has received no
modification by statute in Wisconsin, though it has in some
states, the seduced party has no cause of action for seduction.
She is a consenting party, and the policy of the law has
been to give her no recovery, no matter how her consent is
obtained, for seduction as such; leaving the seducer to be
dealt with under the criminal law when he is brought within
its terms. In the two cases in this state which are cited as
authority in nearly all text-books, *Leavitt v. Cutler,* 37 Wis.
46, and *Giese v. Schultz,* 53 Wis. 462, 10 N. W. 586; *S. C.*
65 Wis. 487, 27 N. W. 353; and *S. C.* 69 Wis. 521, 34 N. W.
913, this view was most distinctly pointed out, and while in
*Leavitt v. Cutler* there were mentioned as elements of dam-
age for breach of promise such things as the "loss of virtue"
and the "injury to reputation," with an expressed doubt
whether they belonged there, it was declared that the fact of
seduction could bring in no additional element of damage,
but at most might serve to enhance the amount of those ele-
ments which, independently, belonged in the action for
breach of promise. Just what those elements are, and
whether they include loss of reputation, is left in doubt by
the Wisconsin cases. In *Coolidge v. Neat,* 129 Mass. 146,
they are defined as follows:

"(1) The disappointment of the plaintiff's reasonable ex-
pectations," . . . including "the money value, or wordly
advantage, of a marriage which would have given her a per-
manent home and an advantageous establishment. (2) The
wound and injury to her affections. (3) Whatever mortifica-
tion or distress of mind she suffered, resulting from the re-
fusal of the defendant to fulfil his promise."

Whether there may be any other elements is immaterial to the present case, for the trial court defined the elements for which damages might be allowed for the breach of promise:

"The benefits and advantages lost to her by the defendant's breach of the contract, together with such sum as will compensate her for such humiliation and mental suffering as resulted to her from defendant's rejection and repudiation of her."

Now, under the rule of *Giese v. Schultz,* the utmost effect of her seduction would have been under this rule of the trial court to enhance the sum which the jury might have thought would compensate her for one or the other of these elements, and, obviously, it was not so limited by the instruction given, which authorized compensation for the "additional injury resulting from seduction." That is in direct disregard of the rule of this court and must be considered error, the effect of which on the judgment, however, need not be considered by reason of a more radical objection now to be stated.

In the finding (No. 8) as to whether or not seduction had taken place the court left to the jury whether the plaintiff had ever had sexual intercourse, otherwise than by force and -against her will, with any man prior to the promise of marriage. He subsequently concluded that this was too restrictive and declined to set the verdict aside, although not supported by evidence under that rule, holding that one act of sexual intercourse could not be said to render a woman unchaste. This opens a broad field of inquiry, full perhaps of close distinctions. But the general rule of law seems to be, from the weight of authority, that although a woman may at one time have lapsed from physical chastity, if it appear affirmatively that she has reformed and at the time of the offense maintained a habit of sexual virtue, she may be deemed chaste within the meaning of the law, so that an invasion of that virtue under a promise of marriage may serve in greater or less degree to enhance the damages she would suffer by a

breach. *Suther v. State,* 118 Ala. 88, 97, 24 South. 43; *Smith v. State,* 118 Ala. 117, 122, 24 South. 55; *Smith v. Milburn,* 17 Iowa, 30; *People v. Clark,* 33 Mich. 112; *People v. Squires,* 49 Mich. 487, 13 N. W. 828. We do not, however, in the present case need to discuss the exact lines of this doctrine. If it appear that a woman has willingly associated herself in the sexual act with a man other than her husband, in a manner and by conduct which excludes the existence of any barrier of virtue or chastity of character needing to be overcome by seductive arts, and that she continued such intercourse at short intervals without suggestion of any repentance or reformation or other break in its continuity, the mere fact that in the course thereof and after the illicit relations are established there intervenes a promise of marriage cannot support a finding that the seduction has been accomplished by such promise, although she may testify that she continued the libidinous relations by reason of it. It is *seduction* by promise of marriage which justifies enhancement of damages, not merely sexual intercourse. The latter may be the result of inclination, passion, or cupidity without entitling the woman to any reward by law. *People v. Clark,* 33 Mich. 112; *Patterson v. Hayden,* 17 Oreg. 238, 246, 21 Pac. 129; *Bowers v. State,* 29 Ohio St. 542, 546; *State v. Brassfield,* 81 Mo. 151, 159; *Comer v. Taylor,* 82 Mo. 341, 346; *Stowers v. Singer,* 113 Ky. 584, 68 S. W. 637; *Hogan v. Cregan,* 6 Rob. 138. In the present case it is established without dispute that on at least one and perhaps two occasions the plaintiff and defendant associated in a sexual encounter before any talk of marriage. The circumstances surrounding the first of these are detailed by the defendant and show a most ready joining therein by the plaintiff: true, with no words of consent, but by acts of preparation and cooperation which are fully the equivalent thereof and evincive of entire familiarity with and inclination to the act. This testimony stands undisputed, except by the plaintiff's

negative answer to a leading question, over objection: "Did you ever consent to allow *Mr. Reinig* to have sexual intercourse with you before he promised to marry you?"—which is far too much a mere conclusion of the witness and evasive of the real facts to constitute any denial of the specific description of her conduct given by the defendant. This act of voluntary and willing intercourse within a very few days before the time when it is claimed the promise of marriage was made, and the entire resemblance to it of the subsequent conduct of the plaintiff in joining with the defendant in sexual intercourse, none of which were coincident in time with the promise, make it to our minds an entirely uncontradicted fact that her yielding was in no wise induced by or dependent on the promise of marriage, and that the finding of the jury to the eighth question was wholly unsupported. The court should, upon defendant's motion, have reversed the answer to that question, or indeed, preferably, should have declined to submit it to the jury. The conclusion thus reached does not affect the rest of the verdict. The error of the court can now be corrected by eliminating from the recovery all that portion which depends upon the answers to the eighth and ninth questions.

*By the Court.*—Judgment modified by reducing the damages to the sum of $10,000, and as so modified is affirmed. Appellant to recover costs in this court.

A motion for a rehearing was denied March 31, 1908.