HESS, Respondent, vs. ZIMMER, Appellant.

*January 11—January 28, 1913.*

*Breach of promise of marriage: Evidence: Instructions to jury:*
*Special verdict: Form: Damages: Seduction.*

1. In an action for breach of promise of marriage, findings by the
   jury to the effect that defendant wilfully refused to marry the
   plaintiff and that he intended to evade his promises to her, are
   *held* to be sustained by the evidence.
2. An instruction to the jury in such case to the effect that defend-
   ant could not escape the consequences of his refusal to marry,
   resulting in a breach of the contract, by a final half-hearted
   offer to consummate it, if it appeared that his bad faith and
   deceit had barred the possibility of a happy result of the mar-
   riage, is *held*, though somewhat obscuring the idea sought to
   be expressed, not to be erroneous nor to have misled the jury.
3. Refusal to submit a proposed question in a special verdict is not
   error where the questions which are submitted fully cover the
   issues.
4. In an action for breach of promise of marriage, where it ap-
   peared that the defendant owned property of the value of
   $12,000 and that he had seduced the plaintiff through his prom-
   ises of marriage, an award of $2,000 as damages was not ex-
   cessive.

APPEAL from a judgment of the municipal court of Outa-
gamie county: THOMAS H. RYAN, Judge. *Affirmed.*

Plaintiff seeks to recover damages for the breach of a con-
tract to marry her. The defendant is a divorced man. He
lived with three of his four children on his farm in the town
of Grand Chute. The other child lived with his divorced
wife. Defendant at the time of trial, October, 1911, was
about forty-five years of age. On May 18, 1908, the plaint-
iff, then about twenty-seven years of age, entered the employ
of the defendant as housekeeper on his farm. She was a di-
vorced woman and had one child dependent upon her. She
remained in defendant's employ until June 15, 1911. The

evidence tends to show that she was a good housekeeper and that she satisfactorily performed her duties under the contract of employment.

The evidence tends to show that in September, 1908, the defendant proposed marriage to the plaintiff and that she agreed to marry him after the expiration of one year from the time when the divorce from her husband had been granted to her. The marriage was postponed by the parties, but on December 29, 1910, February 15, 1911, was agreed upon as the date for the marriage. The plaintiff testified that the defendant seduced her under promise of marriage and at different times prior to June, 1911, he had sexual intercourse with her upon further promises that he would marry her; that the defendant set the time for the marriage for the spring and the fall of each year, without specifying a date; and that each spring or fall he failed to carry out such promises, alleging that he could not leave his work, that he was pressed to pay the alimony to his divorced wife, or that he could not take the time to go to Menominee, Michigan, where he desired the marriage to take place, because he did not wish to be married at Appleton, Wisconsin.

It appears that the defendant's divorced wife had written to one of her children suggesting that she would like to come back at Christmas in 1910. In January, 1911, this letter and another letter to the same effect were seen by the plaintiff. The plaintiff was unwilling to have defendant's divorced wife come to defendant's house and the defendant was willing to have her come for a visit. The marriage between the plaintiff and the defendant did not occur on February 15, 1911. The plaintiff testified that the defendant postponed it, alleging that the weather was too stormy. The defendant testified that the marriage was not celebrated at that time because the plaintiff was not prepared. No specific date was thereafter agreed upon for the marriage. Plaintiff testified

that she was ready and willing to consummate the marriage, but that the defendant refused. The defendant testified that he was ready and willing to marry the plaintiff up to the time of the trial. The plaintiff testified that the defendant insisted as a condition for marriage that she should release any interest she might acquire in defendant's property by reason of the marriage. The defendant testified that the plaintiff insisted upon an ante-nuptial contract under which she was to receive $15 per month from him.

The plaintiff left the defendant's house on June 15, 1911, and shortly thereafter the defendant's divorced wife returned thereto.

The jury returned the following verdict:

"(1) Did the defendant offer or promise to marry the plaintiff and did plaintiff accept his offer? A. (by the court). Yes.

"(2) Did the plaintiff hold herself ready and willing to marry the defendant on the date agreed upon and from the date such promise was made until the 15th of June, 1911? A. Yes.

"(3) Did the defendant, subsequent to their engagement to marry, refuse to marry the plaintiff unless she would sign off all of a wife's rights to his property? A. Yes.

"(4) If you answer question numbered 2 'Yes,' then answer this question: Was the plaintiff justified in believing that inasmuch as the defendant did not marry her between the making of such promise and June 15, 1911, that he did not intend to marry her at all? A. Yes.

"(5) Did the defendant, by reason of such promise to marry, debauch the plaintiff? A. Yes.

"(6) If you answer either question numbered 3 or 4 'Yes,' then answer this question: What sum will compensate the plaintiff for her injuries? A. $2,000."

This is an appeal from the judgment on the verdict awarding the plaintiff a recovery of the damages found by the jury.

For the appellant there was a brief by *Francis J. Rooney,* attorney, and *Francis W. Grogan,* of counsel, and oral argument by *Mr. Rooney.*

*M. S. Catlin* and *F. M. Wilcox,* for the respondent.

SIEBECKER, J.     The appellant contends that the evidence shows without dispute that he was ready and willing to comply with the contract to marry respondent.     The evidence adduced does not sustain this claim.     The good faith of the appellant's verbal professions of his readiness to carry out the contract, when he was informed by the respondent that she would not longer submit to his delays in the matter and when she left his house, was abundantly negatived by his conduct tending to show that he had throughout the whole period of the existence of his promises made unfounded excuses and raised pretended barriers to avoid its consummation.     The facts and circumstances adduced in evidence permit of the inference that the appellant wilfully refused to become united in marriage with the plaintiff and that he intended to evade his promises to her.     The jury's findings to this effect are abundantly supported by the evidence, and this court cannot disturb them.

The court instructed the jury to the effect that the defendant could not escape the consequences of his refusal to marry, resulting in a breach of the contract, by a final half-hearted offer to consummate it, if it appeared that his bad faith and deceit had barred the possibility of a happy result of the marriage.     It is contended that this instruction confused and misled the jury and that they were thereby led to understand that they would be justified in finding that the defendant was guilty of a breach of the contract if they should find that his conduct was incompatible with any happy results if the marriage were in fact consummated.     We cannot ascribe such a result to this instruction.     While the language used obscures somewhat the idea sought to be expressed, it does not embody

an erroneous direction to the jury, and we must presume that the jury understood it correctly. When applied to the issues embraced in the question of the special verdict, there is nothing in the record to indicate that the jury were in any way misled by this instruction.

The appellant requested the court to submit to the jury the question: "Was the defendant at all times, from the time of promise to marry the plaintiff up to the time of the commencement of this action, willing to marry the plaintiff?" The verdict embraced this issue, as appears by questions numbered 3 and 4, and hence the refusal of the court to submit this question could in no way prejudice the appellant.

It is contended that the damages are excessive. The jury were justified to conclude that the defendant owned property of the value of $12,000 and that he had seduced the plaintiff through his promises of marriage. The record does not present such a case that this court can say that the amount found by the jury was excessive. *Olson v. Solveson,* 71 Wis. 663, 38 N. W. 329; *Salchert v. Reinig,* 135 Wis. 194, 115 N. W. 132.

*By the Court.*—The judgment appealed from is affirmed.