GIESE, Respondent, vs. SCHULTZ, Appellant.

*February 26 — March 16, 1886.*

*(1) Breach of promise of marriage: Seduction: Damages. (2) Evidence of rape. (3) Verdict on plaintiff's testimony alone.*

1. In an action for breach of a promise of marriage, where it is alleged that, by virtue of such promise, the defendant seduced the plaintiff and got her with child, the jury, in estimating the damages, may consider the loss of virtue and reputation and the mental suffering and sense of disgrace caused by the seduction, but cannot allow any additional damages because the plaintiff was gotten with child or suffered a miscarriage.

2. In such action evidence that the defendant committed a rape upon the plaintiff is improper.
3. The uncorroborated evidence of the plaintiff in such an action may be sufficient to sustain a verdict in her favor.

APPEAL from the Circuit Court for *Winnebago* County. The facts will sufficiently appear from the opinion. The plaintiff had a verdict in her favor assessing her damages at $3,500, and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *Cotzhausen, Sylvester, Scheiber & Sloan,* and oral argument by *Mr. Cotzhausen.*

*E. L. Runals,* for the respondent.

ORTON, J. This is an action for breach of promise of marriage, in which damages are sought to be recovered, not merely for such breach, but for consequent seduction under and in faith of such marriage contract. In the complaint it is further alleged that the plaintiff was thereby *gotten with child.* It has been on this last branch of the case that the errors complained of mainly have been committed. On a former appeal to this court (53 Wis. 462) the judgment was reversed for almost precisely the same error in instructions to the jury committed at the last trial; or, more properly stated, the error of the court in instructions to the jury committed on the first trial, and which was held fatal to the judgment, was repeated on the last trial. There must have been a strange and unaccountable misconception or misunderstanding of the opinion handed down on the first appeal — which is too plain to be easily misunderstood — that could have caused such a clear and substantial repetition of the error.

The testimony of the plaintiff on the first trial went further than the complaint charging that the plaintiff "was gotten with child," in this, " that her grief thereat, the de-

fendant's neglect, and her work caused a *miscarriage*, and that she was sick, and had to call a physician and have attendants." The former erroneous instruction as to the measure of damages, in case the facts charged were proven, was that the plaintiff was entitled, in addition to the damages for breach of promise and the seduction, to damages for being thereby gotten with child. The language was: "In addition to the damages I have named, take into account this fact, and give such damages as she has sustained by reason of that additional injury." This language was held too broad, because it allowed the jury to estimate the consequential damages which may have been caused by the plaintiff having been gotten with child as the proximate cause, when the being gotten with child was the consequence of the seduction, and the seduction was the consequence of the promise of marriage. Here are three causes, and separate and independent consequences of each: (1) Breach of promise; (2) seduction; (3) being gotten with child; and three separate consequences in damages to be found, or which the jury might find, under that general language, "by reason of that additional injury." The opinion clearly limits such damage to "mental suffering, injury to reputation, and loss of virtue," as the consequence of the seduction, by citing *Leavitt v. Cutler*, 37 Wis. 54; and then says: "It is believed that none of the cases go beyond this, and in principle it would seem that the rule as stated includes all the elements of proximate injury resulting from the breach of the promise of marriage, if, indeed, it does not go beyond the line of proximate injury." There is certainly no obscurity about this. This excluded the fact of the plaintiff having been gotten with child, either as a cause or a consequence, as too remote. The seduction is a consequence merely, and must not be made an independent cause of injury any further than as above stated. If there had been no evidence of the plaintiff having been gotten with child,

and such fact had not been repeated in the charge, and the jury had not been told that they might "take into account that fact, and give such damages as the plaintiff had sustained by reason of that additional injury," then there would have been no error. I have said thus much, not to vindicate or to explain the opinion on the former appeal, but as showing more clearly the reason why we hold that certain evidence was erroneously admitted, and certain instructions were erroneously given on the last trial.

The plaintiff, as a witness in her own behalf, was asked: "Did anything result, any bad consequences result, from the seduction?" This question was objected to, and was allowed only for the reason given by the court, that the evidence was offered for the purpose of showing that the seduction had become known to the public. The witness answered: "Yes, sir; he got me with child." We are not prepared to say that this evidence was proper, even for the purpose named, to show publicity of the seduction, and are disposed to doubt it; but it became very improper when the fact elicited was treated as an independent cause of injury in the charge of the court to the jury, as will hereafter appear. But this was not all. The witness was asked in that connection: "What was the final result?" This question was also objected to, and allowed without any reason being given. She answered: "I cried day and night, for two or three weeks. I took on day and night. All at once, when I was at my sewing-machine, a miscarriage was the result." She then stated how she thought that fact became known to the public. This evidence was clearly improper, and substantially in violation of the rule laid down on the former appeal. These two most important facts, far more serious in their consequences to the plaintiff than the mere breach of the promise of marriage, or the consequent seduction, were thus brought before the jury, and thereafter it would be simply impossible to exclude from their minds a consid-

eration of their consequences in assessing the plaintiff's damages. They are separate and distinct personal injuries, of the most damaging character to the plaintiff. They would almost cause the jury to lose sight of the far less serious injury of the breach of promise and the seduction.

But it was in the instructions of the court to the jury, in respect to these two important facts, that the error was most flagrant. The court instructed the jury, at the request of the plaintiff's counsel, as follows: "In such case you may go beyond what would be a compensation for the loss of marriage, for her wounded pride, and the mental and physical suffering she has sustained on account of the breach of the marriage contract, and give such damages as may be just and fair, and for mental suffering, injury to reputation, loss of virtue, and sense of disgrace sustained by plaintiff on account of such seduction. In such case you may give a fair compensation for this additional injury." This last clause was so general, far-sweeping, and comprehensive that it would include the plaintiff being gotten with child, and her miscarriage, and whatever other personal injuries may have followed the seduction, as proper to be considered in estimating her damages. It is stated as an "additional injury and disgrace," as an independent cause, with unlimited consequences. When the instruction preceding this clause had been given, the rule laid down in *Leavitt v. Cutler*, *supra*, and repeated on the former appeal of this case, was fully complied with, with the addition also of "a sense of disgrace," and there the instruction should have ended. But it did not; and the jury were left to their own estimate of the unlimited damages flowing from this "additional injury and disgrace."

But the most direct and pointed violation of the above rule is found in the following general instructions to the jury: "And if you find the further fact to be that the defendant got the plaintiff with child, *that* you may consider,

and give her damages for the loss of reputation which she may have sustained *in consequence* of *that*, if any." And again: "If you find it to be the fact that he did so seduce her, and get her with child, *that* you may consider in determining the amount of damages which she has sustained." The last instruction the court undertook to limit by saying: "But these damages are for the loss of virtue or loss of reputation." It would be very easy for the jury to assess all sorts of damages under that head, especially when they had been told what they might consider; but, even with this qualification, it was error; for not even the loss of virtue or of reputation should have been estimated as the consequence of her *being gotten with child*, under the above rule. These instructions, together with the above broad and comprehensive rule laid down by the circuit court, under which the loss of reputation and the other consequences of the plaintiff's *miscarriage*, which was improperly admitted in evidence, might have been estimated, make the error bold and palpable, for which the judgment ought to be reversed.

There is another thing that occurred on the trial of this case, though not properly matter of error, that ought to have some attention, and that is this: The plaintiff, on her examination in chief, testified that the defendant got hold of her twice without her consent, as she said she testified to before. On cross-examination she testified that the first instance of her sexual intercourse with the defendant was the result of force, and against her will, or, in other words, *rape.* This did not have, and could not have, any connection with the promise of marriage. Seduction is a different matter. This was proof of an independent crime of a very high degree, by the perpetration of which the plaintiff was greatly abused and injured. It is true that this evidence was not objected to by the learned counsel of the appellant. But we can readily conceive that such a brutal and shock-

ing act, perpetrated on the body of the plaintiff under such circumstances, if believed by the jury as legitimate and proper evidence in the case, would have greatly influenced the jury in estimating the plaintiff's damages. From the very large amount of the verdict of $3,500, when on the first trial the plaintiff recovered only $1,000, we may well conclude that this, and the other extraneous, irrelevant, and improper evidence, and the instructions of the court relating thereto, had great weight and influence with the jury in rendering this comparatively large and punitory verdict. It would have been highly proper, and we think the duty of the court, to have instructed the jury pointedly and emphatically to disregard this evidence of the ravishment. The defendant ought not to suffer by such grossly improper testimony, although his counsel may, by oversight or inadvertence, have omitted to object to it or to move to strike it out.

The learned counsel of the appellant ask this court to hold that the testimony of the plaintiff alone, in such a case, should be corroborated. This we cannot do, as the law now is. The plaintiff is a competent witness in her own behalf, and her interest in the event of the suit goes only to her credibility. There may be much force in the argument of the learned counsel, if addressed to the legislature. Before the statute allowed parties to testify in their own cases and in their own behalf, a charge like this had to be supported wholly by other testimony, and now a conviction of the crime of seduction under promise of marriage cannot be had if the testimony of the injured female is unsupported by other evidence. So long as the law remains as it is now, we have no right to say that her verdict cannot be supported by her testimony alone in such an action. It is the duty of the jury, however, in such a case, in consideration of her interest, to weigh the testimony of the plaintiff without prejudice or partiality, and scrutinize

it with care and judgment, and if it is of such character as to impress upon the jury the conviction of its truth, then her testimony alone is sufficient to obtain and support a verdict in her favor for such damages as she had suffered within the rule above laid down.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.