GAUERKE, Respondent, vs. KILEY, Appellant.

*April 6—June 1, 1920.*

*Breach of marriage promise: Evidence: Fact of pregnancy: Proof
of circumstances attending birth of child: Testimony of
plaintiff that defendant attempted an abortion: Damages:
Proof of wealth of defendant at time of trial: Punitory dam-
ages: Appeal: Prejudicial error: Withdrawal of improper
evidence.*

1. In an action for breach of a promise of marriage, where the
   complaint alleged seduction in aggravation of damages, com-
   pensation may be allowed by the jury for mental suffering,
   injury to reputation, and loss of virtue, but not for damage
   occasioned by the seduction, independent of the promise, such
   as medical expenses and loss of time.
2. Evidence of pregnancy and birth of a child resulting from the
   seduction is admissible to show publicity and extent of injury
   to reputation.
3. Evidence of an attempt by defendant to cause abortion, and
   that plaintiff was alone when the child was born, is inadmis-
   sible as having no legitimate bearing on any of the elements
   which may be considered in aggravation of damages.
4. The admission of evidence of plaintiff that she was alone at
   the time of child-birth and that at the time of trial the child
   was dead, was prejudicial as calculated to excite sympathy
   for plaintiff and prejudice against defendant.
5. Testimony by plaintiff that defendant attempted to cause an
   abortion cannot corroborate her testimony as to the seduction.
6. Error in admitting evidence deliberately offered by a party
   prior to adjournment of the court for the day is not cured
   by the voluntary withdrawal of such evidence by the party
   on the convening of court on the next day.
7. Evidence of the wealth of the defendant at the time of trial
   is admissible on the question of punitory damages and also
   on the issue of compensatory damages, as the best evidence
   of the prospects, at the time of breach, of which plaintiff was
   deprived by defendant's wrongful act.

APPEAL from a judgment of the municipal court of
Brown county: N. J. MONAHAN, Judge. *Reversed.*

Action to recover damages for breach of promise of mar-
riage. The complaint alleges that on or about the 1st day
of August, 1917, plaintiff and defendant entered into a

marriage agreement; that by reason of said promise of marriage the defendant debauched the plaintiff, because of which, and defendant's refusal to marry plaintiff, she is damaged, etc.    The answer was a general denial.

By a special verdict the jury found that defendant promised to marry the plaintiff; that the plaintiff held herself in readiness to marry the defendant at all times between August 1, 1917, and July 1, 1918; that the defendant breached the contract of marriage; that under and by virtue of such promise of marriage defendant seduced the plaintiff; and assessed as damages, compensatory $13,000, punitory $2,000.    Upon the verdict so rendered judgment was entered against the defendant in the sum of $15,000, from which he brings this appeal.

For the appellant there was a brief by *Silverwood, Fontaine & McCreery* of Green Bay, and oral argument by *A. B. Fontaine* and *T. P. Silverwood.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *John F. Martin* and *Gerald F. Clifford,* all of Green Bay.

OWEN, J.    Numerous alleged errors with reference to the admission of testimony are presented, in the consideration of which a proper understanding of the measure of damages applicable in actions to recover for a breach of promise of marriage accompanied by seduction will be helpful.    In *Leavitt v. Cutler,* 37 Wis. 46, 53, it was held that in such an action, where the complaint alleged seduction in aggravation of damages, such seduction might properly be considered as enhancing the damages, and the jury would be justified in rendering a verdict for such liberal amount as in their judgment would be a fair compensation for mental suffering, injury to reputation, and loss of virtue thus sustained by the plaintiff.    This rule was approved in *Giese v. Schultz,* 53 Wis. 462, 464, 10 N. W. 598, where it was also pointed out that other elements of injury, such as loss of

time, expense of medical attendance, and the like, are too remote and not the proximate result of the breach of promise. It was distinctly held that in a breach-of-promise action where seduction was shown to have resulted by virtue of the marriage promise, not all of the elements of damages recoverable in an action for seduction could be recovered in an action based upon the breach of promise to marry, because while many of the elements of damages recoverable in the action for seduction were the proximate result of the seduction they were not necessarily the proximate result of the breach of promise. Courts have not been entirely satisfied with the logic which authorizes the recovery of damages flowing from a tort (the seduction) in an action for damages for breach of promise to marry. Some courts have repudiated the logic altogether and refused to recognize seduction as an element in aggravation of damages in a breach-of-promise action. But the overwhelming authority supports the view that it is proper to take into consideration, in aggravation of damages, the fact that the defendant seduced the plaintiff under a promise of marriage. 9 Corp. Jur. 376; 3 Sutherland, Damages (3d ed.) §§ 984, 985. The extent to which the seduction may be considered in aggravation, however, is generally limited, as stated in *Leavitt v. Cutler, supra,* and *Giese v. Schultz, supra,* to compensation for "mental suffering, injury to reputation, and loss of virtue."

One of the questions here presented is whether proof of pregnancy and the birth of a child as the result of the seduction may be proved. This seems to be a mooted question, and, on principle, it would seem that, if loss of reputation is an element which the jury may take into consideration upon the proof of seduction, the publicity and notoriety of the fact of seduction is a material inquiry, and that where pregnancy or the birth of an illegitimate child results from the seduction the publicity and notoriety thereof must be greatly enhanced. In truth, in the absence of pregnancy

or the birth of an illegitimate child the fact of seduction, as a rule, acquires no authentic publicity whatever, and there is no consequent loss of reputation. It seems illogical, therefore, to say that plaintiff may recover for loss of reputation where seduction results from the marriage promise, but that she is not permitted to prove loss of reputation by showing pregnancy or the birth of an illegitimate child as a result thereof. As said by Mr. Sutherland in his work on Damages, *supra*, § 985: "Mental suffering may result from seduction without pregnancy following; but compensation for disgrace or injury to reputation must be based on the theory that seduction has resulted in pregnancy." We think, upon principle, therefore, that under an allegation of seduction as a result of the marriage promise, in an action for the breach of a contract of marriage, the plaintiff should be permitted to show pregnancy and the birth of an illegitimate child as bearing upon the question of injury to reputation, which, under the rule of the Wisconsin cases *supra*, is an element which may be considered in aggravation under such circumstances. The only question to be considered is whether this court is already committed to the negative of this proposition.

The case of *Giese v. Schultz* made its second appearance in this court and is reported in 65 Wis. 487, 27 N. W. 353. A cursory reading of the opinion there rendered leaves the impression that it was held that pregnancy could not be shown under such circumstances. A close analysis of the opinion discloses, however, that it was not so ruled. It is pointed out in the opinion that the following question was asked of the plaintiff: "Did anything result, any bad consequences result, from the seduction?" The witness answered: "Yes, sir; he got me with child." The court then says:

"We are not prepared to say that this evidence was proper, even for the purpose named, to show publicity of the seduction, and are disposed to doubt it; but it became very

improper when the fact elicited was treated as an independent cause of injury in the charge of the court to the jury, as will hereafter appear."

The court then refers to the fact that the plaintiff was permitted to testify that as a result of the pregnancy she cried day and night for two or three weeks, when a miscarriage occurred. The trial court in that case charged the jury that

"In such case you may go beyond what would be a compensation for the loss of marriage, for her wounded pride, and the mental and physical suffering she has sustained on account of the breach of the marriage contract, and give such damages as may be just and fair, and for mental suffering, injury to reputation, loss of virtue, and sense of disgrace sustained by plaintiff on account of such seduction. *In such case you may give a fair compensation for this additional injury.*"

This court then said:

"This last clause was so general, far-sweeping, and comprehensive that it would include the plaintiff being gotten with child, and her miscarriage, and whatever other personal injuries may have followed the seduction, as proper to be considered in estimating her damages. When the instruction preceding this clause had been given, the rule laid down in *Leavitt v. Cutler, supra,* and repeated on the former appeal of this case, was fully complied with, with the addition also of 'a sense of disgrace,' and there the instruction should have ended. But it did not; and the jury were left to their own estimate of the unlimited damages flowing from this 'additional injury and disgrace.'"

We conclude that the court did not pass upon the question of whether or not proof of pregnancy, as bearing upon the extent of the publicity given to the seduction as a consequent injury to reputation, was admissible, and that the question is an open one in this court. We therefore hold, upon principle, that in an action of this kind, where the complaint contains an allegation of seduction resulting from the promise of marriage, evidence of pregnancy as the result of such

seduction is admissible as bearing upon the extent of injury to reputation as a consequence of the seduction. We should say that we do not consider this conclusion foreclosed by certain language in *Hanson v. Johnson,* 141 Wis. 550, 124 N. W. 506, as the question here presented was not there necessarily involved. This discussion disposes of a number of questions raised by appellant's counsel which it will be unnecessary to treat *seriatim.* What has been said will be ample guidance for the court in disposing of such questions upon a new trial, which we feel must be ordered for errors which will now be pointed out.

The plaintiff was permitted to testify to an attempted abortion, in the following language:

"In October I didn't menstruate, and I told him about it, and he said if I wouldn't in a few days, he would give me some kind of pill that would make me menstruate if I wasn't pregnant, and he called me in a couple of days and asked me, and I told him I had not menstruated as yet, and he said he would come up that evening to give me some pills. He brought me the pills and told me how to take them. I took them. He told me to take two of them and he would call me the next day and ask me. He called me the next day and I told him 'No,' and he said 'Well, you had better take the other three, and if those don't help you will have to go to Milwaukee right away.' I took the other three and didn't menstruate. He said I would have to make arrangements to go to Milwaukee right away if I possibly could, and I told him I couldn't do it right away, but I probably could do it in a couple of weeks, and he says that would be all right."

She was also permitted to testify that there was no one with her at the time of child-birth and that at the time of trial the child was dead. This testimony is plainly condemned by *Giese v. Schultz,* 65 Wis. 487, 27 N. W. 353. There is no causal relation between the breach of the marriage promise and the attempted abortion nor the fact that she was alone at the time of child-birth nor that at the time of trial the child was dead. Such evidence had no legiti-

mate bearing upon any of the elements which may be considered in aggravation of damages as a result of the seduction. That it had a prejudicial effect upon the defendant cannot be doubted. The verdict in this case is a very substantial one, and that a portion of it was due to the perfidious light in which the defendant was placed before the jury by reason of proof of his having advised, counseled, and attempted an abortion upon the plaintiff is more than probable. Likewise the testimony that plaintiff was alone at the time of child-birth and that at the time of trial the child was dead was well calculated to excite the sympathy of the jury and swell the verdict in her behalf.

It is true that with reference to this testimony the court charged the jury as follows:

"There has been evidence offered and introduced tending to show that the plaintiff was with child as a result of intercourse with defendant, and that said child died, and certain evidence by the plaintiff tending to show that the defendant gave certain pills and medicine to the plaintiff with a view of producing an abortion. This testimony was admitted as bearing upon the issue of whether plaintiff was in fact seduced by defendant and whether there was in fact a promise of marriage."

In other words, the court attempted by this charge to limit this evidence to corroboration of her own testimony as to promise of marriage and the fact of seduction. The plaintiff had testified to the promise of marriage and to the seduction. We fail to see how the fact that the child died was corroborative of either of these propositions. Neither do we perceive how the testimony relating to the attempted abortion coming from the plaintiff herself was in any sense corroborative of her former testimony with reference to the promise of marriage and the seduction. She had testified squarely and frankly upon both of these issues. If some third party had been able to testify to the fact of defendant's attempted abortion it would be corroborative of her testimony with reference to the seduction, but how her

own testimony to this culpable conduct on the part of the defendant could in any manner corroborate her testimony as to the seduction we are unable to perceive. Her testimony as to the fact of seduction was not strengthened or corroborated by her own testimony as to the attempted abortion. If she was manufacturing her testimony as to the seduction, she could as well go further and manufacture the testimony as to abortion. For this error there must be a new trial.

Evidence was introduced tending to show the extent of publicity given to the fact of plaintiff's pregnancy and the subsequent birth of an illegitimate child. This evidence was introduced late in the afternoon of the day shortly before the court adjourned, and plaintiff's counsel, at the beginning of the proceedings on the following day, called attention to the evidence and requested that it be withdrawn from the consideration of the jury and that the court instruct the jury to disregard it in arriving at their verdict. This motion was granted and the court so instructed the jury. Respondent contends, first, that if the introduction of this evidence was improper, the withdrawal thereof in the manner indicated cured the error of its admission. We desire to say that we should be very reluctant to hold that if the introduction of the evidence was improper the error could be thus cured by its withdrawal on the day after its reception. While this court has frequently held that the striking out of evidence improperly received sufficed to cure the error involved in its reception, we are not disposed to permit attorneys to gamble upon such matters. Where an attorney deliberately offers evidence, permits the effect thereof to remain with the jury over night, and attempts to save himself from the error of its introduction while in a measure retaining the benefits thereof, by withdrawing the same the next day, it should quite plainly appear that prejudicial error did not follow in order to save a reversal. Where inadmissible evidence is promptly stricken after its

receipt its effect upon the jury is minimized. But where it is permitted to remain with the jury a considerable length of time its effect cannot easily be neutralized or dissipated. *Alsheimer v. State,* 165 Wis. 646, 163 N. W. 255. Furthermore, a greater presumption of non-prejudicial error should be indulged where the damaging testimony is volunteered by a partisan or loquacious witness without the procurement of the party benefited thereby than when it is deliberately introduced by him. In this case, however, we do not think the introduction of the evidence constituted error. This follows from what has been said in our opening discussion.

The court admitted evidence of defendant's wealth as of the time of the trial. This is assigned as error. Evidence of the wealth of the defendant was admissible in this case as bearing upon both punitory and compensatory damages. It is well settled, upon both reason and authority, that evidence of the wealth of the defendant as of the time of trial is admissible upon the question of punitory damages. 2 Sutherland, Damages (4th ed.) § 405. In this case we also think it is proper on the question of compensatory damages, although there is a dearth of authority upon this question. In *Dent v. Pickens,* 34 W. Va. 240, 12 S. E. 698, it was held that, while evidence of the wealth of the defendant was admissible as tending to illustrate the advantages which plaintiff would have secured by the marriage, no evidence could be given of any fact having a tendency to aggravate or diminish the damages which occurred after the commencement of the suit. This doctrine was followed in *Vierling v. Binder,* 113 Iowa, 337, 85 N. W. 621, where the court said:

"Appellant also objects that the evidence introduced related to his pecuniary condition at the time of trial, and not at the time of the making of the promise, but the time to which the evidence related was not so remote from that at which the promise was claimed to have been made as to render it inadmissible on that theory."

In *Fisher v. Kenyon,* 56 Wash. 8, 104 Pac. 1127, it is held that evidence of the financial ability of the defendant should be confined to the time of the breach. It is intimated in *Douglas v. Gausman,* 68 Ill. 170, that proof of defendant's financial circumstances should relate to the time of trial. In view of these various holdings that proof of financial ability should be confined to the date of the promise, the date of the breach, the commencement of the suit, and to the time of trial, we feel at liberty to consider the question as an original proposition.

There is no dispute upon the proposition that the financial loss resulting to the plaintiff by reason of the breach of promise of marriage is a proper element to be considered in assessing damages. By reason of the breach of promise the plaintiff has lost a life association and settlement the character of which depends upon the financial standing and ability of the defendant, and, for obvious reasons, it has been held that the plaintiff may show the earning capacity of the defendant for the purpose of showing the condition in life which plaintiff would have attained by consummation of the contract. *Rime v. Rater,* 108 Iowa, 61, 78 N. W. 835. If plaintiff may show the financial prospects of the defendant, why may she not show the facts as they exist at the time of trial when such prospects have been reduced to a reality? Upon this question, as all others, the best evidence attainable should be produced. What will occur in the future is always a matter of more or less speculation, an inference to be drawn from present or past circumstances, and the condition of defendant at the time of trial furnishes a more certain basis for an estimate than does the condition of defendant at any prior date. The successes or failures of the defendant during the interim between the promise or the breach and the time of trial may shed most valuable light upon the question of his future prospects and enable the jury to form the best judgment possible with reference thereto. We think the evidence of the financial

condition of the defendant as it exists at the time of trial is proper in an action for breach of promise as bearing upon the question of compensatory as well as punitory damages.

Other errors relied upon by appellant are either ruled by prior decisions of this court or relate to the sufficiency of the evidence to support the verdict. These have been carefully considered and the conclusion reached that they cannot be held prejudicial error. We cannot say that the verdict is not supported by the evidence. But for reasons before pointed out there must be a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.