ABLEMAN, Respondent, vs. HOLMAN, Appellant.

*January 12—February 7, 1928.*

*Breach of marriage promise: Damages: Instructions: As to wealth of defendant: Excessive damages.*

1. In an action to recover damages for breach of a promise to marry, an instruction that in assessing compensatory damages the wealth or want of wealth of defendant is not to be considered, but the amount is to be fixed solely with regard to a sum sufficient to compensate plaintiff, was erroneous, since the compensable actual damages are the loss sustained by plaintiff by reason of the failure to become defendant's wife, and this in a large measure depends on defendant's wealth and position in the community.  pp. 103, 104.

2. Admissions by defendant concerning his wealth, made three or four years before the trial, were not admissible where there was no testimony of present wealth, meaning wealth at the time of the trial.  p. 104.

3. Evidence showing that plaintiff, earning from $80 to $100 per week, disposed of the engagement ring given her by defendant, and in a short time married happily, and that she had lost no other offer of marriage by reason of defendant's promise, is *held* to show that $4,000 would adequately compensate her for the damage sustained.  p. 105.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Action to recover damages for breach of promise to marry. The parties to this action first met in February, 1924. He was then a single man, aged thirty-seven, living at Sheboygan, and she was a single woman, aged thirty, living in Elgin, Illinois. They very soon thereafter became engaged, and on Decoration Day he gave her a diamond engagement ring valued at about $525. They corresponded with each other quite frequently and met several times in Chicago and other places where he took her to entertainments. In June, 1924, he broke his engagement by a telegram sent from Sheboygan to Elgin, Illinois. In the fall of

that year an action for damages was brought by her, in which action she joined several others as defendants. The case was decided by the supreme court and is reported in 190 Wis. 112, 208 N. W. 889. It was there held that an action for conspiracy against several would not lie for a breach of promise to marry. The jury in that case returned a verdict of $15,000. Plaintiff was married in October, 1925, to one Joseph Barnet. Plaintiff had been earning from $80 to $100 per week doing commission business for Chicago merchants for the last three or four years. She testified on this trial that at the time of their engagement he told her he was earning $5,500 per year and was worth about $75,000; had an automobile and a race horse valued at $1,500. This he positively denies and testified upon the trial that he was worth practically nothing. The jury returned a verdict for $10,000 compensatory damages and $5,000 for punitory damages and the trial court entered a judgment accordingly, from which judgment the defendant appealed.

For the appellant there was a brief by *Reilly & O'Brien,* and oral argument by *Frank W. Cosgrove,* all of Fond du Lac.

For the respondent the cause was submitted on the brief of *T. L. Doyle* of Fond du Lac.

VINJE, C. J. In instructing the jury the trial court said:

"The wealth of the defendant or want of it may be considered in assessing exemplary damages, as what might be adequate in view of the purpose of such damages in case of a man of small means, might not be so in case of a man of great or considerable wealth. In assessing compensatory damages, however, the wealth or want of it of the defendant is not at all to be considered. The amount should be fixed solely with regard to what is sufficient to compensate the plaintiff, not at all with regard to defendant's ability or inability to pay."

This instruction is correct as to the great mass of damage cases, especially for personal injury.   But it is not a correct instruction in an action for damages for breach of promise to marry, because in such an action the compensable actual damages are the loss which the plaintiff sustained by reason of a failure to become the wife of the defendant.   The position which the defendant can offer her is in a large measure the element of her damages, aside from grief, mortification, and the loss of his companionship.   The position in the community which he can give her, if a wealthy man, is much more desirable than if he is a poor man, not only so far as social position is concerned but so far as her own personal comfort and pleasure is concerned.   Other things being equal, it is much more desirable to be a rich man's wife than a poor man's wife.   It was therefore manifest error to give such instruction in regard to compensatory damages in this kind of a case.   *Gauerke v. Kiley,* 171 Wis. 543, 177 N. W. 889.

The only evidence of the defendant's wealth which the plaintiff introduced was admissions said to have been made by him three or four years before the trial.   In the case last cited it is held that the rule in Wisconsin is that the wealth must be proven to be possessed at the time of the trial, not as of the time of the engagement or a long time prior thereto.   While these claimed admissions of the defendant may have been corroborative of other evidence given as to the defendant's wealth as of the time of the trial, we must hold that they are not admissible where there is no testimony as to present wealth, meaning wealth at the time of the trial. For these reasons the judgment must be reversed.   The defendant, however, is given the option of taking judgment against him for $4,000 or a new trial.   We are led to this result from the undisputed facts of the case.   The plaintiff testified that the defendant in all respects acted towards her as a perfect gentleman.   They became engaged in February.

The following June he broke the engagement. Both had been pursuing their usual vocations. It is true a lot of letters passed between them, but there is nothing to indicate that there was anything contained in them which should mar or change the relation which they bore to each other. In June he asked her to return his ring and said he could not go through with the marriage for various reasons, none of which were satisfactory to her and none of which perhaps justified him in breaking the engagement. His statement was that he thought that they had been too hasty and acted too hastily and it was better to break it off. She met her present husband in August, 1926, and in October she married him. She disposed of the engagement ring for $275 very soon after the defendant in this case broke the engagement. It appears from this that the plaintiff is a woman of action and thrift. She testifies that she is now living very pleasantly and happily with her husband and that he is a far better man than the defendant. She also testified that she had lost no other offer of marriage by reason of the defendant's promise to marry her. So under the circumstances we have reached the conclusion that $4,000 would adequately compensate her for the damage she has sustained. In the first trial this court said that prejudice aroused by the conspiracy charges were no doubt an adequate explanation of the verdict of $15,000 in that case. And in this case the manifest error in charging that the jury could assess as heavy damages against the defendant under testimony that he was worth practically nothing at the time of the trial as they could under testimony that he was a millionaire was so manifestly prejudicial to him that it no doubt accounts for the verdict returned.

*By the Court.*—The defendant is given an option, to be exercised within thirty days after the return of the record, to have judgment reduced to $4,000, and in case he does not a new trial is ordered.