# August Term, 1949.

DETTMER, Respondent, vs. SWANSON, Appellant.

*September 12—October 11, 1949.*

For the appellant there was a brief by *Charles F. Millmann* and *Dougherty, Arnold & Waters,* all of Milwaukee, and oral argument by *Suel O. Arnold.*

*George J. Graebner* of Milwaukee, for the respondent.

ROSENBERRY, C. J.   On this appeal the defendant states the questions involved as follows:

(1) Did the plaintiff have the right to amend her amended complaint at the opening of the trial?

(2) Was evidence of the financial condition of the defendant at the time of the trial admissible?

(3) Were the damages awarded to the plaintiff by the verdict of the jury excessive?

(1) At the opening of the trial the plaintiff moved to amend the complaint so as to include the following allegation:

"That the circumstances of defendant's conduct subsequently to date of contract to marry plaintiff were inclusive of seduction of the plaintiff by the defendant upon his promise of marriage, and by reason thereof were in aggravation of damages."

The defendant objected to the allowance of the amendment but defendant's objection was overruled and the amendment allowed. The allowance of the amendment was a matter clearly within the discretion of the trial court and its allowance did not amount to abuse of discretion.

(2) It is next contended that the court erred in admitting evidence of the financial condition of the defendant at the time

of the trial. Defendant concedes that in Wisconsin the established rule is that the financial condition of the defendant at the time of trial may be proved in a breach-of-promise action (*Ableman v. Holman* (1928), 195 Wis. 102, 217 N. W. 689). The defendant contends that this rule is contrary to the great weight of authority and that the cases so holding should be overruled under the authority of *Fisher v. Kenyon* (1909), 56 Wash. 8, 104 Pac. 1127, 20 Ann. Cas. 1264. An examination of that case does not sustain the defendant's contention. We see no reason for changing the rule long established in this state.

(3) The principal contention made here is that the damages found by the jury are excessive. As already stated the action was begun July 3, 1946, for breach of contract to marry which occurred on March 31, 1945,—a year and three months after the defendant married another woman, and was not tried until February, 1948. The defendant's mother died on June 28, 1946, and this action was begun the day after the mother's funeral. The defendant inherited from his mother two pieces of real estate located on East Iron street, in the city of Milwaukee, upon one of which there was a mortgage of $1,900. Witnesses for the plaintiff testified that the properties were worth between $16,000 and $17,500. Witnesses for the defendant testified that the properties were worth from $12,500 to $15,450. At the time of the trial defendant was employed at a salary of $50 a week. So far as the record shows he had accumulated no property from his earnings.

It is apparent from the amount of damages awarded that the jury was influenced by the fact that the defendant had repeatedly promised to marry the plaintiff at fixed dates and from time to time had not carried out his promise; in addition thereto that the plaintiff had been seduced by the defendant. The evidence upon this point is not very clear. The only testimony given by the plaintiff upon the trial was to the effect that she had not had intercourse with the defendant prior to

the time that he had promised to marry her. She said nothing about their relations in that respect subsequent to that time. However, the defendant testified that they had intercourse on the evening of the first day that he met her at the home where she was then employed, and many times thereafter.

According to the testimony of the plaintiff she was twenty-four years of age when she came to Milwaukee in 1924. In subsequent winters she came to Milwaukee to work and returned to her home in Iowa to assist her father on the farm during the summer months. She met the defendant in 1936 at the Wisconsin Roof Ballroom, they then went to a tavern and from there the defendant took the plaintiff by taxicab to the place where she worked. The defendant testified that he and the plaintiff then went into the house where she worked and that there they had intercourse. This is denied, as already stated, by the plaintiff. It is conceded that the proposal of marriage was made and accepted in November, 1936, at the Eiseman home where the plaintiff was working. The defendant, according to plaintiff's testimony, promised to give her an engagement ring but excused himself from time to time on the ground that he could not afford it. At the time of the engagement the plaintiff was thirty-six years of age and the defendant twenty-six. The association between the parties continued. The defendant was inducted into the military service in May, 1942. At that time the defendant made a determined attempt to marry the plaintiff but the parties were unable to secure a marriage license prior to the time the defendant was ordered into service. The defendant made repeated promises to carry out his engagement and marry the plaintiff. Upon defendant's return from overseas he asked the plaintiff to meet him in Chicago on March 17, 1945. The plaintiff met the defendant and was accompanied by the defendant's mother and a sister of the mother. At that time the defendant renewed his protestations of affection for the plaintiff and in-

troduced the plaintiff to a number of people as the woman who was to be his wife. The defendant came to Milwaukee to see the plaintiff on March 24, 1945, at which time he again promised marriage as soon as he was able to obtain a furlough. On March 31, 1945, the defendant married another woman. This marriage took place the next day after the defendant requested the plaintiff to meet him at the home of Margaret Mitchell, sister of defendant's mother, on April 3, 1945. At the the time of his marriage the defendant was thirty-six years of age and the woman to whom he was married was fifty-one years of age at that time. It appears from the correspondence that plaintiff had known of the relation of the defendant and the woman whom he married for some years, but she did not attach any importance to it. While the plaintiff testified that she suffered severe disappointment, lost weight, and was much injured in her feelings, it appears that shortly after the defendant's marriage the plaintiff wrote a letter to the defendant asking an explanation. The defendant immediately responded by long-distance call from Hines Hospital, as he was still in the service. As result of the letter and telephone call the plaintiff and defendant met at the North Shore station in Milwaukee in May, 1945, approximately six weeks after the date of defendant's marriage. Following this there were a number of meetings. The plaintiff testified that during that summer she saw the defendant two dozen times and maybe more.

It would extend this opinion to an unreasonable length and serve no useful purpose to set out in greater detail the evidence in regard to the relation of the parties. There is no doubt that the defendant repeatedly promised to marry the plaintiff; that she accepted his attentions; that she knew he was impecunious and unable to marry until he could secure a good job which he apparently was unable to do; that he married another woman, leaving her to find out from her friends rather than from him the fact that he was terminating

their engagement. She was at all times a more mature and better poised person than he. Nevertheless she was willing to marry him and, for some reason which does not appear, he finally married the other woman without previous notice to the plaintiff, under circumstances which were very embarrassing to the plaintiff.

However, taking all the facts into consideration we are of the view that the damages awarded by the jury are excessive to an extent which requires a reversal of the judgment. The judgment if permitted to stand would strip the defendant of nearly all he possesses. After carefully considering the facts in the case the court is of the view that it should not fix the amount of damages but, in lieu of that, give the plaintiff an option to terminate the litigation or take a new trial.

*By the Court.*—The judgment appealed from is reversed and the cause is remanded to the trial court with an option to the plaintiff to enter judgment in favor of the plaintiff and against the defendant for the sum of $5,000. If within thirty days from the filing of the remittitur in the trial court the plaintiff does not exercise the option to take judgment a trial *de novo* is awarded the parties.