Jean **CATANZARO** (Plaintiff), Respondent,

v.

John V. **DUZER** (Defendant), Appellant.

No. 30342.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1959.

258

Gerald Cohen, St. Louis, for appellant.

F. G. Armstrong, St. Louis, for respondent.

ANDERSON, Judge.

This is an action in three counts brought by Jean Catanzaro against John V. Duzer. In count one, plaintiff sought damages for a breach of promise to marry; in count two, for the reasonable value of services rendered by plaintiff to defendant; and in count three, for the value of an automobile alleged to have been wrongfully taken from plaintiff by the defendant. The trial resulted in a verdict for plaintiff on count one in the sum of $3,000, and in plaintiff's favor on count two in the sum of $850. On count three, the jury found for the defendant. From the judgment entered on this verdict defendant has appealed. In this court defendant complains only of alleged errors with respect to the trial of counts one and two.

Plaintiff, in support of count one, testified she was 29 years of age and had never married. In 1954 she was employed by the United Sales Company, which was owned by Mr. Mallorrus. She was managing a store for United Sales Company at that time. She first met the defendant in February or March, 1954. Defendant at that time was employed by the Sheaffer Pen Company as a salesman. On the occasion in question defendant had come to the store where plaintiff was employed to see Mr. Mallorrus, the purpose being to secure an order for pens. At that time defendant introduced himself to plaintiff and engaged her in conversation. A week later defendant again called at the United Sales Company and he and plaintiff talked for a few minutes. A week later they had another conversation which lasted about 30 or 45 minutes. On that occasion defendant asked plaintiff if she would go out with him. She accepted this invitation and made a date for dinner for the following week. Thereafter, she would see defendant on weekends. Defendant was on the road selling during the week. Plaintiff and defendant had dinner together usually on Saturday evenings, and sometimes on Sunday afternoons.

About a month after the parties began going out together the subject of marriage was mentioned. At that time defendant told plaintiff he was very much in love with her and wanted to marry her. Plaintiff made no answer to this proposal. The subject was next discussed several weeks later, in March of 1954. At that time plaintiff accepted the proposal. In December, 1955,

defendant gave plaintiff an engagement ring.

After plaintiff's acceptance of defendant's proposal the parties talked about their marriage on several occasions. Defendant wanted to postpone the wedding until his mother, who lived in South America, could meet plaintiff. In November, 1954, defendant went into business for himself, operating under the name of American Pen Company. Thereafter, he told plaintiff he thought it would be better to build up the business before they got married so that they would have enough money with which to buy a home. On one occasion the parties fixed the date of their marriage as "right after the Christmas season was over, which was around January of '56." but it was postponed because "his mother was living with him, and he said he had to wait until his mother left." In March, 1956, defendant came to the office where plaintiff worked and "said that I should go home, that it was all over." The marriage never took place. Defendant did not give any reason for breaking the engagement.

Defendant testified that he never offered to marry plaintiff; that he never bought her an engagement ring; that he never discussed with "her parents or herself anything about marriage in any way, shape or form"; that he never obtained a marriage license; that he did not investigate renting a hall for a marriage ceremony; that he never contacted a clergyman relative to a marriage; and never introduced plaintiff as his fiancee.

Plaintiff testified that after her engagement to defendant she supplied defendant with certain furnishings for the apartment where the parties contemplated living after their marriage. These items were: a dresser set consisting of comb, brush, and mirror; assorted linens; pillows; assorted knicknacks; complete kitchen utensils, consisting of flatware, pots, pans, dishes; a bedroom chair; and towels for the bathroom. She stated that the total value of these items was $1,700, but that items of the value of $250 were returned.

Plaintiff also testified that she made the following gifts to defendant: a gold watch and band of the value of $275; a pair of diamond cuff links and tie pin, worth approximately $1,000; a small initial tie tack of the value of approximately $75; and several pairs of cuff links, shirts, and different things for different holidays and birthdays, of the total value of approximately $250.

Defendant testified that he himself furnished the apartment, and that he paid plaintiff for whatever she picked out. Defendant offered in evidence a check which he stated was made out to Jean Catanzaro as reimbursement for money she spent for towels, sheets and pillowcases. He also introduced in evidence an invoice from the R. Burton Moore Furniture Company showing $741 worth of furniture purchased consisting of two night tables, two lamps, one living room couch, two living room chairs, two living room end tables, one assortment of ash trays, and one hassock.

Defendant went into business for himself in November, 1954. He rented a small store at 1717 Lawrence Street in St. Louis and operated the business under the name of American Pen Company. His business was that of jobbing ball-point pens and selling pens, pencils, jewelry and watches to different drugstores, gift houses and grocery stores. Defendant's business required him to be on the road selling five or six days a week, making it necessary to have help in his office. It was at this time that plaintiff started to work for defendant. She worked part time from November, 1954, to September or October, 1955. She worked in the evenings and at odd times for a total of about 35 hours a week. During the day she was employed full time at United Sales Company. Her duties in connection with defendant's business were to take care of orders that came in during the day. She also kept defendant's books. In September or October, 1955, she quit her job at United Sales Company and went to work for defendant on a full time basis. About that time defendant opened a retail store called

The Discount House. This establishment was located at 3649 South Grand Boulevard in St. Louis. Plaintiff was put in charge. She did the buying, and sold watches, jewelry, and appliances. She made bank deposits and took care of the major portion of the business. There were four or five other regular employees. Their duties were not similar to those performed by plaintiff. The only thing they did was selling. Some of these employees . were paid $50 a week and others $60 a week. There was part time help employed for work after school hours and on Saturdays at from $40 to $65 a week. In all, there were eight to ten people working for defendant. Plaintiff testified she worked full time for defendant six or seven months, and for five of those months she worked from morning until eleven or twelve o'clock at night six days a week, and on Sundays until six o'clock in the evening. She stated she started drawing a salary after the Discount House was moved about February, 1956, until she left in April, 1956. She received $250 for a six weeks period. Prior to that she received no salary.

Defendant testified he paid plaintiff for her services at the Discount House through January, 1956. He stated there were numerous checks made out to her. However, he produced only one check, defendant's Exhibit C. This check, according to his testimony, was made out for the sum of $25 and was dated January 23, 1956. He stated that the check probably was for salary for work for a day or two. This check was not made a part of the transcript or lodged in this court. He stated he had numerous checks made out to plaintiff but some were missing due to a robbery he sustained in May, 1956. No other record of any payment to plaintiff for salary for the period of her full time employment was offered. Defendant did offer some checks dated at different times from March, 1955, to June, 1955, but these are not relevant to the issues on this appeal since they represented payments made prior to the time plaintiff was employed on a full time basis. Plaintiff's suit was for the reasonable value of her services while working full time. Defendant further testified he had paid plaintiff $1,800 or $2,000 during the time she worked for him.

Defendant further testified that when he established the Discount House he and plaintiff entered into a written contract wherein he agreed to give plaintiff 25% of the net profits before taxes. He stated that whatever she received under this contract was to be the compensation for her work. This contract, though offered in evidence, was neither made a part of the transcript nor lodged with our Clerk. Defendant further testified that an accounting at the end of the year 1955 showed there were no profits and nothing due plaintiff. He stated that from September, or thirty days prior thereto, plaintiff devoted full time to the business until January, but after that "she worked maybe two days in a week, maybe four days in a week, depending," which was normal for the business, "being after Christmas."

On rebuttal, plaintiff was shown a withholding tax form for 1955 which, according to her testimony, showed a total wage of $50. She stated she did not receive any salary for that year other than the $50 reported.

■ Appellant's first point is that the trial court erred in not sustaining his motion for a directed verdict. In support of this contention it is urged that plaintiff failed to prove her case by the preponderance or greater weight of the evidence. In disposing of this point it is sufficient to say that appellate courts in this state are not authorized to reverse a case on the ground that the verdict of the jury is against the weight of the evidence. Dixon v. Edelen, Mo.Sup., 300 S.W.2d 469; Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78; White v. Rohrer, Mo.Sup., 267 S.W.2d 31; Renfro v. Lazerine, Mo.App., 298 S.W. 1067; Hogsett v. Smith, Mo.App., 229 S.W.2d 20; Bloch v. Kinder, 338 Mo. 1099, 93 S.W.2d 932. It is also urged that the plaintiff's evidence was insufficient to make a case for

the jury because her testimony as to the existence of the defendant's promise to marry was not corroborated. Such corroboration is not essential to a recovery. Thompson v. Scott, 34 N.D. 503, 159 N.W. 21; Lowden v. Morrison, 36 Ill.App. 495; Salchert v. Reinig, 135 Wis. 194, 115 N.W. 132; Giese v. Schultz, 65 Wis. 487, 27 N.W. 353.

■ Appellant contends that the court erred in including in Instruction IV as an element of damages the "reasonable value of all gifts given by plaintiff to defendant," for the reason that such gifts could only be the basis of an independent action and are not recoverable in an action for breach of promise of marriage.

Ordinarily, the value of gifts made in contemplation of marriage would not be a proper item of recovery in a breach of promise action, but could only be recovered in an action based upon a breach of the implied condition of the gift. An action in replevin or trover would be an appropriate remedy. But in the case at bar implied consent to the trial and submission of the right to recover the value of said gifts may be inferred. We find no objection whatever in the record by the defendant to the introduction of evidence on this issue, either on the ground that the value of the gifts was not recoverable in this type of action, or on the ground that the evidence was beyond the scope of the pleading. In fact, defendant joined issue on this phase of the case. He offered testimony to the effect that he had reimbursed plaintiff for money expended by her in the purchase of some of the alleged gifts. Under such circumstances, the petition will be deemed amended to conform to the proof, and appellant will not be heard to complain of the submission of the issue to the jury. Section 509.500 RS Mo 1949, V.A.M.S.; Evett v. Corbin, Mo. Sup., 305 S.W.2d 469.

■ Appellant's next complaint alleged error in Instruction V, given on behalf of plaintiff. The first point made is that it was an abstract instruction. We find no merit to this contention. It was a verdict-directing instruction submitting the issues embraced within count two. It directed the jury that if they found that plaintiff did perform services for defendant at his instance and request, for which services plaintiff had not been paid, their verdict should be for plaintiff, in which event they should assess damages in plaintiff's favor for the reasonable value of such services.

■ As another ground of error it is urged that there was no evidence of reasonable value of plaintiff's services. We find no merit to this contention. There was testimony in the record that defendant did pay plaintiff the sum of $250 for the last six weeks of her employment. This furnished a proper guide for a determination of the reasonable value of plaintiff's services during her full time employment—the period for which recovery was sought. It is apparent from the amount allowed that the jury used this testimony as a guide in reaching their verdict. It has been held that in determining the reasonable value of services, the amount actually paid for such services is evidence of their value. Wyse v. Miller, 222 Mo.App. 165, 2 S.W.2d 806; Davis v. Fyfe, 107 Cal.App. 281, 290 P. 468; Ege v. Born, 212 Iowa 1138, 236 N.W. 75; 31 C.J.S. Evidence § 184, p. 904.

■ The next point made is that the instruction permits a recovery of the value of gifts that were returned. This, no doubt, has reference to certain items bought for defendant's apartment which were returned by plaintiff. The point is not carried forward and developed in the argument. Under such circumstances, the point will be deemed waived. Reliable Life Ins. Co. v. Bell, Mo.App., 246 S.W.2d 371.

■ As a final complaint against Instruction V it is urged that the instruction is erroneous because it "failed to include material and disputed factual controversies for the determination of the jury or guide the jury as to the proper amount of damage that it might find." This specification of

**262**

error is too general to preserve anything for review. Gelhot v. City of Excelsior Springs, Mo.App., 277 S.W.2d 650; Kennedy v. Hartwig-Dischinger Realty Co., Mo.App., 201 S.W.2d 475; Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481; Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W.2d 117.

■ There are other complaints directed against Instruction V which are not referred to in the points relied on but appear only in the argument in appellant's brief. These are not properly before us. Sides v. Contemporary Homes, Inc., supra.

The judgment of the trial court is affirmed.

WOLFE, P. J., and RUDDY, J., concur.